## LANE *v.* STATE

[No. 326, September Term, 1960.]

*Decided July 6, 1961.*

Submitted to BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

Submitted on brief by *Roland Walker* for the appellant.

Submitted on brief by *Thomas B. Finan, Attorney General, Thomas W. Jamison, III, Assistant Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *James W. Murphy, Assistant State's Attorney,* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant was convicted in the Criminal Court of Baltimore as a third offender of two charges of selling narcotics and one of having narcotics in his possession and under his control. He was sentenced to 15 years in the Penitentiary in each case, the sentences to run concurrently, and has appealed.

It not infrequently happens in cases of second and third offenders that the offenders acquire a smattering of knowledge of the principles of the criminal law and think they have eruditely encompassed the entire field of criminal jurisprudence. This is a case of that nature. The appellant insists upon his court-appointed attorney presenting to this Court nine alleged assignments of error, although the attorney quite frankly, and we think quite properly, admits (with reference to several of the contentions) that "after an examination of the prior pertinent holdings of [the Court of Appeals], there have been found no previous adjudications, reference to which would serve the appellant's cause favorably * * *." The questions raised have little, if any, merit, but they will be answered seriatim.

### I

The appellant first claims that certain remarks made by the prosecuting attorney in his opening statement and others made in his closing argument were prejudicial. The remarks are quite lengthy, and it would serve no useful purpose to set them forth in detail. Appellant's counsel objected to the remarks made in the opening statement and requested the court to instruct the jury to ignore the same. The court sustained the objection and instructed the jury to ignore the remarks. Nothing more was requested of the court. Maryland Rule 885; *Lusby v. State,* 217 Md. 191, 141 A. 2d 893. No error was committed here.

The assertion of prejudicial error in the statements made

in the closing argument cannot be sustained. The appellant was represented by counsel. The remarks were induced, at least in part, by the conduct of the accused during the trial and by the argument of counsel for the accused. Compare *Meno v. State,* 117 Md. 435, 83 A. 759. But the controlling feature in this contention is that no objection to the remarks was made to the trial judge, nor was any request made for a mistrial. In this situation ordinarily there is nothing before us for determination. Maryland Rule 885; *Madison v. State,* 200 Md. 1, 87 A. 2d 593; *Hall v. State,* 213, Md. 369, 131 A. 2d 710. And a careful review of the entire proceedings below discloses no denial of due process of law. Compare *Apple v. State,* 190 Md. 661, 59 A. 2d 509.

## II

The appellant next contends that the defense of entrapment is available to him. Agent Lozowicki testified that he called the appellant on the telephone during the afternoon of October 9, 1959, and stated his name was "Slim." After discussing some of the people that were selling narcotics, the Agent informed appellant that he was interested in buying some and would like to meet him. Arrangements were made for the parties to meet a short time later at Eastern and Oldham Streets. They met according to plan, and the appellant sold him fifty dollars worth of morphine. On October 15, 1959, the Agent again called Lane and made arrangements to meet him in the vicinity of the Moses Kahn parking lot. They met, and on this occasion Lane sold him a hundred dollars worth of morphine. Again on November 7th, of the same year, the Agent had another telephone conversation with the appellant, in which the appellant stated that he had some cocaine for sale. This time they agreed to meet at the Moses Kahn parking lot. The appellant came to the lot accompanied by one Barbara Aversa. He left his car, entered the Agent's automobile and handed the Agent a package containing a number of capsules, which contained cocaine. The Agent told Lane he had his money in the trunk of his car. He stepped out of his automobile, which was a signal to fellow officers, and they immediately arrested the appellant.

Lane concedes that this Court has heretofore recognized the right of police officers "to lay a trap and unite with others to detect an offense," citing *Callahan v. State,* 163 Md. 298, 162 A. 856, but contends that the instant case presents a novel departure from any of the previous cases before this Court, in that here the law enforcement officers laid not one, but three traps. Agent Lozowicki stated there were several reasons why an arrest was not made immediately after the first purchase from Lane: it was desirable to locate the source of the narcotic supply if possible; the officers wanted to obtain a "positive case" against the defendant (who they knew was selling narcotics); and they wished to discover possible associates of the appellant.

We have so recently considered and restated the law in Maryland with respect to the defense of entrapment that any extended discussion of the subject would necessarily be repetitious. In the case of *Baxter v. State,* 223 Md. 495, 165 A. 2d 469, Judge Horney, for the Court, dealt with the subject quite fully. Using the standards therein stated (223 Md. at page 499), we hold that the conduct of the officers in the instant case had an appropriate objective of uncovering criminal design, and was permitted police activity, often employed and frequently essential to the effective enforcement of the law.

### III

During the course of the trial, the prosecutor handed the appellant a letter and asked him if he had written it. He replied that he had not. After further questioning concerning the letter, the attorney for the State asked him if he had not written to Barbara Aversa and attempted to have her perjure herself in respect to her and the appellant's activities "in reference to narcotics." He replied that he did not. Appellant's counsel objected to the question and requested the court to instruct the jury to disregard the letter until it was admitted into evidence. The court stated in the presence of the jury: "He has denied it [writing the letter]. I am sure the jury hasn't anything really to consider. * * * I say he has denied—he gave you a negative response to your ques-

tion. Therefore, there isn't anything for the jury to consider to the contrary as far that question." Nothing further was requested of the court. Later the prosecutor again adverted to the letter. This time he asked the appellant: "In this letter to Barbara Aversa did you not admit you had passed narcotics to Agent Lozowicki?" Counsel for the accused objected, the court sustained the objection, and, again, nothing further was requested of the court.

It may well be that in the posture of the proceedings below when the questions were asked, neither should have been. The questions were not simple interrogations to a witness as to whether he had written to a certain person making certain statements and requests. Here the prosecutor was holding in his hand a letter, which he had tried to establish as having been written by the defendant, but had failed to do so. The questions propounded contained the purported contents of the letter, and the mere asking of the questions in this mode was getting the contents of the letter to the jury by indirection; something that could not be done directly, since the letter was not proven to have been written by the defendant. Compare *Cook v. State,* 225 Md. 603, 171 A. 2d 460. The insistence of the prosecutor in asking questions of this nature possibly would have justified the court, in the exercise of his sound discretion, in granting a mistrial, but here the court did all that defense counsel requested of him, and no motion for a mistrial was made; hence there is nothing before us for decision. Maryland Rule 885. One of the principal objectives of Rule 885 is to require counsel to call any irregularity in the proceedings to the trial court's attention, so that it may be corrected, if possible, as the Court of Appeals does not sit to review the wisdom of, or correct possible errors in, the trial tactics of counsel for the respective parties. Compare *Madison v. State,* 200 Md. 1, 87 A. 2d 593.

IV

After the State had put on its case in chief and the defendant had closed his testimony, the State called Officer Kearney as a rebuttal witness. Defense counsel objected. The

appellant had testified that his purpose in going to the Moses Kahn parking lot on November 7th was to look at some furniture; that he had not entered Agent Lozowicki's automobile but had remained in his own from which he was ordered out at gunpoint; and that the officers had broken the window of his car in order to get in. This testimony was contradicted, directly or inferentially, by Officer Kearney.

Any competent evidence which explains, or is a direct reply to, or a contradiction of, material evidence introduced by the accused may be produced by the prosecution in rebuttal. *Shanks v. State,* 185 Md. 437, 45 A. 2d 85. And what constitutes rebuttal testimony in a criminal prosecution is a matter resting in the sound discretion of the trial court. *Jones v. State,* 132 Md. 142, 103 A. 459; *Kaefer v. State,* 143 Md. 151, 122 A. 30. This Court has held that it is within the sound discretion of the trial judge to allow evidence in rebuttal that should have been offered in chief. *Kaefer v. State, supra; Rickards v. State,* 129 Md. 184, 98 A. 525. We find no abuse of discretion here.

## V

This contention was submitted by the appellant without oral argument and without argument in his brief. The Attorney General, "obligingly," did likewise, which, of course, means "let the Court look up the law." An examination of the argument on the motion to suppress the evidence (The motion was argued below by the appellant personally. The motion is not in the Record Extract, and the argument on the motion does not specify exactly what evidence the appellant claimed should have been suppressed.) discloses that the appellant claimed that the cocaine obtained from him on November 7th was obtained as the result of an unlawful search and seizure and hence should have been suppressed.

After the appellant's argument on the motion to suppress was heard, during which the appellant stated most, if not all, of the purported facts, which he claimed constituted an illegal search for, and seizure of, the cocaine, the court announced that he would reserve his ruling on the motion until he had

heard the evidence. Agent Lozowicki testified that Lane, after his arrival at the Moses Kahn parking lot, came to the Agent's car and handed him the cocaine. Several other officers confirmed the fact that Lane went to the Agent's automobile; and one officer stated that when they "rushed" the government car, the one driven by Agent Lozowicki, the narcotic was on the front seat of that automobile. The officers also detailed the facts at the time of appellant's arrest on November 7th, and none testified to a search of Lane's person or his car. The cocaine claimed to have been handed to Agent Lozowicki in the government car by Lane was the only narcotic offered in evidence relative to the charge of November 7th. The officers testified that after Lane was arrested and they approached his automobile, a female companion of Lane locked the doors, and it was necessary to break a window to prevent her from driving away. The appellant testified that the officers broke into his car (claiming he had the doors locked) without a search warrant, and, at gun point, searched him. Then they took his keys and opened the trunk of his car. Finally one of them said they had found what they wanted and took him to Police Headquarters where he was interrogated about 57 capsules of cocaine they claimed to have taken from his possession.

The court denied the motion to suppress, but unfortunately failed to state his grounds for the ruling. However, the denial of the motion was correct. If the trial judge believed the officers' version, there was no illegal search or seizure, and the cocaine was admissible evidence. If he believed Lane's story, there was still no illegal search or seizure. Both Agent Lozowicki and Agent Fialkewicz were United States Narcotics agents working under the Treasury Department. By Act of Congress, 26 U. S. C. A. (1960 Cum. Ann. Pocket Part) § 7607, agents of the Bureau of Narcotics are authorized to make arrests, without warrants, for violations of any law of the United States relating to narcotic drugs (as defined by Section 4731) where the violation is committed in the presence of the person making the arrest or where such person has "reasonable grounds" to believe that the person

to be arrested has committed or is committing such violation.[1] "Reasonable grounds," as used in this subsection, and "probable cause," as used in the fourth amendment to the Constitution of the United States have substantially equivalent meanings. *Draper v. United States*, 358 U. S. 307. Probable cause exists when the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information are sufficient, in themselves, to warrant a man of reasonable caution in the belief that an offense has been, or is being, committed. *Carroll v. United States*, 267 U. S. 132, 162; *Draper v. United States, supra; Mulcahy v. State*, 221 Md. 413, 158 A. 2d 80.

It can scarcely be argued seriously that an officer, who had made two recent purchases of narcotics from the offender and who had made arrangements by telephone for a third delivery at a specified place, did not have probable cause and reasonable grounds to believe that the offender had in his possession or under his control narcotics, when the offender arrived at the prearranged meeting place. *Draper v. United States, supra; Johnson v. United States*, 270 F. 2d 721 (9th Cir.); *United States v. DiBella*, 178 F. Supp. 5 (D. C., N. Y.). The arrest of Lane being lawful, the incidental search of his person or his automobile (still considering, without deciding, that his version of his arrest was true) did not constitute an unlawful or illegal search, which would warrant a suppression of the cocaine. *Draper v. United States; Mulcahy v. State*, both *supra*.

## VI

This contention is so frivolous that it scarcely merits a reply. The appellant, personally, requested the trial court to disqualify himself. The only reason given was that the trial judge had heard his petition for a writ of *habeas corpus*. No

---

1. 26 U. S. C. § 4724 (c) provides that it shall be unlawful for any person who has not registered and paid the tax thereon (with certain exceptions) to have in his possession or under his control narcotic drugs; and that such possession or control shall be presumptive evidence of a violation of said subsection and others.

bias or prejudice on the part of the judge was shown. The accused in a criminal case does not have the right to select a judge of his own choosing to try his case.

## VII

This assignment of error is devoid of merit. The appellant complains of the trial court's failure to instruct the jury that if he were convicted as a second offender, he would not be entitled to receive a suspended sentence, and that "probation or parole would not be granted until he had served at least five years * * *," and, if convicted as a third offender, he could not receive a suspended sentence and would not receive a parole or probation until he had served at least ten years. The short but complete answer to the question (assuming, but not deciding, that he was entitled to such an instruction) is that no request was made of the court to so instruct the jury, nor was any objection made to the omission of the same from the court's charge. Maryland Rule 739 g.

## VIII

Under this heading, the appellant complains that the trial court informed the jury that the program at Spring Grove State Hospital was not available to him because, apparently, the program was designed for first offenders. What we said under VII is a complete answer to this complaint. No objection was made to this portion of the court's instruction. Maryland Rule 739 g.

## IX

The final claim of the appellant is that it was improper to indict and try him as a third offender, thereby acquainting the jury with his prior criminal record for narcotics. The propriety of this procedure was sustained by this Court in *Maguire v. State,* 47 Md. 485; *Beard v. State,* 216 Md. 302, 140 A. 2d 672; *McCoy v. State,* 216 Md. 332, 140 A. 2d 689; and *Toyer v. State,* 220 Md. 205, 151 A. 2d 730. For a possible change in the procedure in the future, see the Tentative Draft, Maryland Rules of Procedure (1960), proposed Maryland Rule 713.

*Judgments affirmed.*