### COCKEY *v.* STATE

[No. 322, September Term, 1965.]

*Decided June 29, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Claude A. Hanley*, with whom was *Maurice W. Baldwin* on the brief, for appellant.

*Julius A. Romano, Assistant Attorney General*, with whom were *Thomas B. Finan, Attorney General, Frank H. Newell, III* and *Gerard V. Caldwell, State's Attorney* and *Deputy State's Attorney*, respectively, *for Baltimore County*, on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Lewis B. Cockey, charged with eight counts of "bets on horse racing" (Code, 1957, Art. 27, § 240)[1] and two counts of "violation of lottery laws" (Code, 1957, Art. 27, § 362),[2]

---

1. Art. 27, § 240, entitled "Betting, wagering or gambling; pools on horses, etc.," provides in pertinent part:

"It shall not be lawful for any person * * * to bet, wager or gamble in any manner, or by any means, or to make or sell a book or pool on the result of any trotting, pacing or running race of horses or other beasts or race, contest or contingency of any kind * * * or by any means or devices whatsoever, to receive, become the depository of, record or register, or forward or purpose, or agree or pretend to forward any money, bet, wager, thing or consideration of value, to be bet, gambled or wagered in any manner, or by any means or device whatsoever * * * and any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor * * *."

2. Art. 27, § 362, entitled "Possession of lottery tickets, records or money," provides in pertinent part:

". * * * [I]f any person shall have in his possession * * * any book, list, slip or record of the numbers drawn

was tried by the Circuit Court for Baltimore County sitting without a jury and found guilty generally. The appeal to this Court from the convictions presents questions as to (i) whether the general finding of guilty applied to all of the offenses with which the defendant was charged and (ii) whether the defense of entrapment was available to the defendant as to the charges of violating the lottery laws.

At the time of his arrest, the defendant was a cab driver. On March 12, 1963, Officer Payne and Corporal Elliott, members of the vice squad of the Baltimore County Police Department, began an investigation of the activities of the defendant which continued through March 20th. Other than the fact that a female was observed "making contact with [the cab driver] on numerous days," there was little evidence as to what the investigation disclosed. By March 23rd, however, the police were apparently satisfied that they had enough information to justify the conclusion that the defendant was violating the lottery laws. On that day Officer Payne was given $5.50 in currency—four marked $1 bills and $1.50 in change—and a slip of yellow paper on which were written lottery numbers. The officer, who was evidently not in uniform, drove to the vicinity of Adams Cab Stand in Towson with two other police officers. While they waited at a distance, Officer Payne approached the defendant and talked to him briefly before handing him the money and the lottery slip. When the defendant put them in his pocket, the officer identified himself as a police officer and signaled the other two officers who, having observed the incident, came forward and arrested the defendant. Upon searching him, they found, not only the lottery ticket and marked money, but several slips of white paper on which were written bets on horse races.

---

in any lottery * * * or any book, list, slip or record of any lottery ticket * * * or of any money received or to be received from, or for the sale of any such lottery ticket * * * he shall be liable to indictment, and upon conviction shall in the discretion of the court be fined * * * or shall be imprisoned * * * or shall be both fined and imprisoned; * * *."

(i)

While it is not clear, the contention that there should have been separate verdicts as to each offense with which the defendant was charged was evidently based on the belief that the trial judge did not intend to find him guilty of a violation of the statute (§ 240 of Art. 27) pertaining to bets on horses.

We do not, however, find it necessary to decide whether the general verdict of guilty applied to the charges of receiving bets on horse races because there was no evidence to support the charges other than the fact that when the defendant was arrested he had slips of paper in his possession containing notations of horse race bets. As the State concedes, such evidence is insufficient to support a conviction under § 240 of Art. 27. See *La Faivre v. State*, 208 Md. 52, 116 A. 2d 368, *rev. per curiam* 208 Md. 71, 118 A. 2d 639 (1955). *Cf. Curley v. State*, 215 Md. 382, 137 A. 2d 640 (1958). The judgment entered on the finding of guilty insofar as it concerns the charge of "bets on horse racing" is therefore reversed.

(ii)

Nor do we have to decide whether the defense of entrapment was available to the defendant on the charges of violating the lottery laws because the evidence necessary to support a conviction under § 362 of Art. 27 was likewise insufficient.

The record shows no more than that the police officer handed the marked money and lottery slip to the defendant and that he put them in his pocket. There was no evidence as to what the officer said to the defendant, nor that the defendant looked at what was handed to him, nor even that the defendant knew he was accepting a lottery slip. Moreover, since there was nothing to indicate that the defendant knew he was violating the law, the evidence fell short of showing that the object of the police activity was to reveal the criminal design of the defendant. *Cf. Lane v. State*, 226 Md. 81, 172 A. 2d 400 (1961), *cert. den.* 368 U. S. 993 (1962), and cases therein cited.

> *Judgments reversed and case for violations of lottery laws remanded for a new trial; Baltimore County to pay the costs.*