PEOPLE v McGEE

CRIMINAL LAW—EVIDENCE—REBUTTAL EVIDENCE—APPEAL AND ERROR
  —PRESENCE AT CRIME—HOMICIDE—CASE IN CHIEF.
  Evidence which tends to prove the commission of a crime or its
  immediate surroundings cannot under ordinary circumstances
  be classed as rebutting evidence; therefore, it was reversible
  error in a murder trial to introduce in rebuttal of the defend-
  ant's alibi testimony evidence tending to establish the presence
  of the defendant at the scene of the crime which should have
  been introduced in the people's case in chief.

Appeal from Calhoun, Creighton R. Coleman, J.
Submitted January 7, 1976, at Grand Rapids.
(Docket No. 18870.) Decided March 10, 1976.

Charles McGee was convicted of first-degree
murder. Defendant appeals. Reversed and re-
manded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *John J. Rae,*
Prosecuting Attorney (Prosecuting Attorneys Ap-
pellate Service, by *Lee W. Atkinson,* Assistant
Attorney General), for the people.

*Marshall S. Redman,* Assistant State Appellate
Defender, for defendant.

Before: D. E. HOLBROOK, P. J., and R. M. MAHER
and D. F. WALSH, JJ.

PER CURIAM. Defendant was charged with first-

REFERENCE FOR POINTS IN HEADNOTE
29 Am Jur 2d, Evidence §§ 250, 269.

degree murder, MCLA 750.316; MSA 28.548, for the October 6, 1972, shooting death of David Michael Baker. At the conclusion of a four-day jury trial he was found guilty of the charged offense and subsequently sentenced to life imprisonment. This appeal is taken by right and raises several issues, one of which requires reversal. The other issues will be considered only as they may recur at a new trial.

The people's case rested primarily on the eyewitness testimony of Miss Leslie Foust. She testified that at about 8:15 p.m. on the evening of October 6, 1972, a black man who identified himself as "Jackie" came to the door of the house where she resided with the decedent Baker. The man inquired as to the whereabouts of a man known to both himself and Miss Foust and then left. A few minutes later another black man appeared at her door and asked to use the telephone. The second man appeared to Miss Foust to be one whom she had seen standing outside by a car when "Jackie" had come to the door. After this second man had gained entry he drew a gun, shot and killed Baker and then shot Miss Foust twice before leaving. The defense at trial was alibi.

During the people's case in chief no evidence was presented establishing a connection between the defendant and the person named Jackie. However, on cross-examination of the defendant it was developed by the prosecutor that a man by the name of Jackie Evans was known to the defendant. The questioning made reference to an interview the defendant had had with a Battle Creek police officer:

"A. It didn't happen. I don't have no recollection of anyone asking me about a man named William Blevens.

*"Q.* To help you a little bit, he lived in Albion.

*"A.* It still doesn't tell me anything.

*"Q.* And you do not recall questioning along that line?

*"A.* No, I don't.

*"Q.* I'll give you one more hint. He was known as Jackie. Do you remember?

*"A.* I know a Jackie.

*"Q.* What is his name.

*"A.* I know a Jackie Evans.

*"Q.* Jackie who?

*"A.* Evans.

*"Q.* And did you not tell the police that he stayed with you at 91 West Grand Circle?

*"A.* No Jackie Evans stays with me at 91 Grand Circle."

After the defense rested the prosecutor called Battle Creek police officer Alan Tolf to testify as to statements made to him by the defendant after the defendant's arrest in November of 1972. Subsequent to a *Walker*[1] hearing held during trial these statements were ruled admissible. Officer Tolf was then permitted to testify without further objection as a rebuttal witness:

*"Q.* Now, did you make any inquiry about his knowing Jackie?

*"A.* Yes, sir, I did.

*"Q.* And what did he say in response to that?

*"A.* I asked Mr. McGee if he had a black person by the name of Jackie, a black male by the name of Jackie living with him around October of 1972 and he stated that he did.

*"Q.* And did he indicate whether they were friends or whether the guy was renting or what the detail was?

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

"*A.* Yes, sir, he stated that they were close as brothers.

"*Q.* And did you ask him whether—well, tell us what else you asked him about Jackie and anything he told you about Jackie.

"*A.* I asked him what Jackie's last name was, and he stated that he thought it was Blevens or something like —it sounded like Blevens and that he wasn't sure, because he'd never asked this individual what his last name was.

"*Q.* Did he indicate how long the man lived with him?

"*A.* I don't really recall.

"*Q.* And did he say where he lived with him?

"*A.* No, sir, he couldn't recall where they were staying at the time.

"*Q.* Only that they were staying together at that time?

"*A.* Yes, sir.

"*Q.* Did you ask him specifically about October 6, 1972?

"*A.* Yes, sir, I did.

"*Q.* What did he say about that?

"*A.* He stated that he thought that he and Jackie were together, but he didn't recall where they were staying on that particular day."

The guidelines for the admission of proper rebuttal testimony have been firmly settled in this state since the early case of *People v Quick,* 58 Mich 321, 323; 25 NW 302 (1885), in which the court stated:

"[I]t is not proper to divide up the testimony on which the people propose to rest their case, and nothing which tends to prove the commission of the crime itself or its immediate surroundings can be classed as rebutting evidence under ordinary circumstances, if at all."

Other more recent cases which have dealt with

the question are *People v McGillen #1,* 392 Mich 251, 264–268; 220 NW2d 677 (1974), and *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975).

We agree with the defendant that the testimony of Officer Tolf was not proper rebuttal. Virtually the only contested issue of fact in this case was the identity of the killer of David Michael Baker. The prosecution's evidence on this issue was limited to the testimony of Miss Foust, the only surviving eyewitness to the crime, who identified the defendant as the man who did the shooting. Obviously any other evidence tending to establish the presence of the defendant at the scene of the crime was vitally important to the prosecution's case. The testimony of Officer Tolf relating an admission by the defendant that he knew and was staying with a man named Jackie around the time of the murder was such evidence and it should have been introduced in the people's case in chief. It was reversible error to admit this testimony as rebuttal evidence. See *People v Bennett, supra,* at pp 449–450.

With reference to the other issues which may recur in a new trial, any ruling on the admission of the defendant's misdemeanor convictions should be guided by *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974). Furthermore, any alibi instruction should meet the requirements of *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974), and *People v Burden,* 395 Mich 462; 236 NW2d 505 (1975).

We accordingly reverse the defendant's conviction and remand for proceedings consistent with this opinion.