708 A.2d 316

**Rodney Wade WRIGHT**

v.

**STATE of Maryland.**

**No. 73, Sept. Term, 1997.**

Court of Appeals of Maryland.

April 17, 1998.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

WILNER, Judge.

Rodney Wright was convicted by a jury in the Circuit Court for Charles County of second degree rape, second and third degree sexual offense, and child abuse, for which he was given varying terms of imprisonment. The judgments were affirmed by the Court of Special Appeals. We granted *certiorari* to consider two questions: (1) whether the trial court erred in allowing, as rebuttal evidence, an inculpatory statement that Wright made to Louis Hurt, a one-time cell-mate at the county detention center; and (2) whether, for purposes of the child abuse conviction, Wright qualified as a "household member," within the meaning of Maryland Code, Article 27, § 35C (1957, 1996 Repl.Vol.).[1] We shall answer both questions in the

---

[1] In a conditional cross-petition, the State asked us to consider whether, by failing to make a proper objection, Wright failed to preserve his challenge to the rebuttal evidence. We denied the conditional cross-petition, so that issue is not before us. Implicit in our ruling on the cross-petition, of course, is our belief that there was a sufficient objection.

affirmative and therefore reverse the judgment of the Court of Special Appeals and remand the case for retrial.

## UNDERLYING FACTS

In June, 1995, Wright was living in Bel Alton with Shirley Thompson and Shirley's two children, Latara, age 4, and Rhonda, age 2. The victim in the case was Shirley's younger sister, Queen Champion, who was then 12 years old. Queen lived with her mother (Juanita Thompson), her stepfather, and her two younger sisters about 15 miles away, in Indian Head. Following the end of the school term and with her mother's consent, she went to stay with Shirley for part of the summer. There is some dispute as to when she actually arrived. Juanita Thompson said that Shirley came to get her around June 10 or June 13, which conforms with Queen's recollection, and, for purposes of this appeal, we shall assume that to be the case. Initially, the stay was to be for two weeks, but it was extended to July 10. At some point near the end of June, a friend of Queen's, Tomika Dorsey, came to stay for about a week. Queen and Tomika occasionally played outside but also helped care for Shirley's children.

On June 28, Shirley left the home at about 8:30 a.m. to keep an appointment at the health department. In the home at the time were Wright, Queen, Tomika, Latara, and Rhonda. Queen testified that, while Rhonda was sleeping and Tomika and Latara were taking a bath, she was watching television. When the TV began "acting up," Queen asked Wright, who was in his bedroom, if he could fix it. According to Queen, as she was leaving Wright's room, he called her back, pushed her on to the bed, and locked the door. He held her down on the bed, removed her shorts and underwear, performed cunnilingus, and then had sexual intercourse with her. She said that she was squirming, kicking, screaming, and attempting to get away, to no avail. At some point, one of the other children began knocking on the door, asking to come in, but Wright continued. Not until he heard Shirley returning did he relent, jump up, and put on his clothes. Queen ran into the bathroom and noticed blood "and some slimy stuff" coming from her

vagina. Wright, she said, warned her not to tell anyone what happened, or he would "slam [her] head into the wall."

Although Queen said that she called for Shirley to come into the bathroom, Shirley responded instead to Wright. Thereafter, Queen said nothing. Her mother came to get her on July 10, after somehow learning from one of her other daughters that Wright had "fooled with" Queen, but it was not until Queen was home that she informed her mother what had happened. Ms. Thompson took her daughter to the hospital, where she was examined. The doctor found one tear of the hymen which, the doctor later testified, indicated a single incident of intercourse.

## DISCUSSION

### The Statement To Louis Hurt

After his arrest, Wright was incarcerated in the county detention center. His cell-mate for part of that time was one Louis Hurt, who was facing carjacking and robbery charges. According to Hurt, although Wright was initially reluctant to discuss the charges against him, he eventually told Hurt a story that was largely consistent with Queen's version of what had occurred. It was, in every respect, a full confession. Although Hurt was listed as a witness by the State, he did not testify, and was not even mentioned, in the State's case-in-chief. The State's case consisted of the testimony of Queen, her mother, and the doctor who examined Queen at the hospital. Queen's account was thus corroborated principally by the testimony of the doctor that she was not a virgin and that the tear to her hymen indicated only one penetration. In cross-examination, the suggestion was planted that Queen may have had intercourse with a boyfriend which, if true, could also explain her vaginal condition.

That defense was pursued in Wright's case, in large part through the testimony of one of Queen's girlfriends, Crystal Hill, who said that, in June, 1995, Queen had told her that Queen and her boyfriend, Damian, had had intercourse on one

occasion.[2] Queen also told her that she (Queen) and Wright had "had sex," although Queen said nothing about being raped. Wright was the last defense witness. On direct examination, he denied having had sexual intercourse with Queen; he denied pushing her on the bed and removing her clothing; he denied having oral sex with her; and he denied removing his own clothes in Queen's presence. He was not asked about Louis Hurt or whether he had made any statements to Hurt. He acknowledged having spoken with a police detective when he was arrested on July 10, identified the written statement given to the detective, and was questioned about some aspects of it, although the statement itself was never offered into evidence. On cross-examination, he was asked, for the first time, whether he knew Hurt, and he acknowledged that he did. He also acknowledged having talked to Hurt about this case, although not about what his testimony would be. When asked whether he trusted Hurt sufficiently to tell him "about what happened," Wright objected, and, at the bench, the prosecutor made a proffer:

"First, he told him, I am in on these charges, they charged me with this. Then he talked to him later and the defendant said, it is her mother, the mother is behind this. He talked to him a month later and he said, I will tell you what happened, and he told him the entire thing that happened, him and Shirley were having problems, she was out of the house that day. He wanted to get a nut so he had sex with Queen."

The court overruled the objection, declaring that the State could ask "about any admissions he may have made." Upon further questioning, Wright again admitted having talked to Hurt about the charges and even about Queen's mother, but he denied telling him "that what happened was that you and Shirley were having some problems, and you just wanted to get a nut so Queen was there and you had sex with Queen." On redirect examination, he said that he knew Hurt and did

---

2. Both Queen and the boyfriend, Damien, denied that they had engaged in sexual intercourse.

not trust him. He said that Hurt was aware of the charges against him—Wright had a copy of the charges with him in jail and Hurt had seen them—but that, when Hurt questioned him about the charges, he "just told him to mind his business."

Immediately upon the conclusion of Wright's testimony, which ended the defense case, the State called Hurt as a rebuttal witness. Over objection, Hurt was permitted to testify essentially as the prosecutor had proffered. Omitting intervening questions, he said:

"[Wright] told me that him and his girlfriend were having problems between each other. She left ... to go to the health department, took one of the children with her. He was left in the house with him and his other daughter and ... Shirley's sister ... Shirley was gone. She left. He was in the living room playing with his daughter and Shirley's sister asked him could he fix the antenna in the bedroom. He went to fix the antenna and he started to think to himself the girl looks pretty good. He went behind her and said he pushed her on the bed and started to have oral sex with her and she started screaming, saying stop. He said he just want to get a nut."

Hurt continued that, in addition to having oral sex, Wright admitted having vaginal intercourse with Queen and stopped only when Shirley's car pulled up. Wright also said that he threatened Queen if she said anything.

There are a number of nuances and distinctions that need to be considered in this case, but the ultimate question is whether it is permissible for the State to withhold from its case-in-chief an inculpatory statement by the defendant bearing directly and substantively on the defendant's guilt, set the stage for using the statement in rebuttal by asking the defendant on cross-examination whether the defendant ever made such a statement, and then using the statement in rebuttal if the defendant denies having made it. The answer depends on the nature of the statement, what it is intended to rebut, whether it is being offered as substantive or impeachment evidence,

and whether it really could have been used in the State's case-in-chief.

The general rule, of long standing in Maryland, is that "the plaintiff [which in a criminal case is the State] must put in the whole of his evidence upon every point or issue which he opens, before the defendant proceeds with the evidence on his part." *Maurice v. Worden,* 54 Md. 233, 251 (1880). It may not "go into half of its case and reserve the remainder, but is obliged to develop the whole." *Cumb. & Penn. R.R. Co. v. Slack,* 45 Md. 161, 176 (1876) (quoting from 1 Greenl. Ev. § 74). More recently, we noted, with particular reference to criminal cases, that "[o]rdinarily, an orderly conducted criminal trial anticipates the State adducing all of its evidence in chief and resting its case. The defense follows by producing its evidence tending to establish the accused's non-culpability...." *Mayson v. State,* 238 Md. 283, 288, 208 A.2d 599, 602 (1965). A contrary practice, this Court has observed, "would not only greatly prolong trials, but would frequently lead to surprise and injustice." *Bannon v. Warfield,* 42 Md. 22, 39 (1875); *Cumb. & Penn. R.R. Co., supra,* 45 Md. at 176; *State v. Booze,* 334 Md. 64, 67, 637 A.2d 1214, 1216 (1994). *See also* 6 J. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1873 (Chadbourn ed. 1976).

There are two caveats to the general rule, both described in some detail in *State v. Hepple,* 279 Md. 265, 368 A.2d 445 (1977). The first arises from the discretion that a trial court has to permit a party to reopen its case-in-chief, even after the opposing party has concluded. In *State v. Booze, supra,* 334 Md. 64, 637 A.2d 1214, we synthesized holdings and pronouncements from earlier cases, including *State v. Hepple* and *Dyson v. State,* 328 Md. 490, 615 A.2d 1182 (1992), and, quoting from some of those Opinions, confirmed (1) that the trial court has discretion "to permit the moving party to reopen its case to introduce evidence adducible in chief," but (2) that, in exercising that discretion, the judge must consider a number of factors, including "whether the State deliberately withheld the evidence proffered in order to have it presented

at such time as to obtain an unfair advantage by its impact on the trier of facts," and "[w]hether good cause is shown; whether the new evidence is significant; whether the jury would be likely to give undue emphasis, prejudicing the party against whom it is offered; whether the evidence is controversial in nature; and whether the reopening is at the request of the jury or a party." 334 Md. at 69, 637 A.2d at 1217. The judge must consider "whether the proposed evidence is merely cumulative to, or corroborative of, that already offered in chief or whether it is important or essential to a conviction." *Id.* at 69, 637 A.2d at 1216–17. The discretion, in other words, though broad, is not unbounded; it cannot be used to permit the plaintiff/State unfairly to prejudice the defendant. We made clear in both *Hepple,* 279 Md. at 270, 368 A.2d at 449, and *Booze,* 334 Md. at 69, 637 A.2d at 1216, that the court's allowance of such a reopening will not constitute an abuse of discretion "so long as [it] does not impair the ability of the defendant to answer and otherwise receive a fair trial."[3]

The second caveat deals with rebuttal evidence. In *Mayson v. State, supra,* 238 Md. at 289, 208 A.2d at 602, and *State v. Hepple, supra,* 279 Md. at 270, 368 A.2d at 449, we defined rebuttal evidence as any competent evidence which explains, or is a direct reply to, or a contradiction of "any new matter *that has been brought into the case by the defense.*" (Emphasis added.) *See also Lane v. State,* 226 Md. 81, 90, 172 A.2d 400, 404 (1961), where we defined it as competent evidence which explains, or is a direct reply to, or a contradiction of,

---

3. This seems to be the general rule, although some States have taken a different, more flexible approach and have allowed the prosecution to withhold important evidence, including a confession, and use it to rebut even denials of guilt. *See,* for example, *Walker v. State,* 89 Nev. 281, 510 P.2d 1365 (1973); *Wallace v. State,* 84 Nev. 603, 447 P.2d 30 (1968); *Crawford v. State,* 688 P.2d 357 (Okla.Crim.App.1984); *Commonwealth v. Adams,* 174 Pa.Super. 504, 102 A.2d 202 (1954). Those cases rest on the view that a trial court has virtually unbounded discretion in allowing the State to present its evidence as it pleases and, to some extent, seem to confuse the court's discretion to allow the State to reopen its case-in-chief, which they find broader in scope than we do, with the discretion to determine what constitutes proper rebuttal evidence.

"material evidence *introduced by the accused* . . . ." (Emphasis added.) The articulation that we used in *Lane* was repeated in *Booze, supra,* 334 Md. at 70, 637 A.2d at 1217.

There is an important distinction between rebuttal evidence and evidence sought to be admitted pursuant to a reopening of the case-in-chief. In the latter situation, the evidence ordinarily would have been admissible during that party's case-in-chief; its proponent merely seeks to have the evidence admitted out of order. A party bearing the burden of proof on an issue ordinarily has no *right* to have evidence admitted out of order after the party has closed its case. Varying the order of proof is, however, clearly within the court's discretion, which is why a decision to permit a party to reopen its case-in-chief for that purpose also is discretionary. Because rebuttal evidence, in contrast, is designed solely to address new matters or facts introduced by the defendant during the defendant's case, that evidence ordinarily would have been inadmissible, as irrelevant, in the plaintiff/State's case-in-chief, for, at that stage, there would have been nothing to rebut. Thus, although there is discretion in the trial court to determine whether evidence offered in rebuttal actually qualifies, under the test we have established, as proper rebuttal evidence, *Hepple, supra,* 279 Md. at 270, 368 A.2d at 449, if the evidence does qualify as rebuttal, the party ordinarily has a *right* to have it admitted. Wigmore explains the distinction:

"For matters *properly not evidential until the rebuttal,* the proponent has a *right* to put them in at that time, and they are therefore not subject to the discretionary exclusion of the trial court. Matters that should have been put in at first may by that discretion be refused later, because this is but the denial of a second opportunity. But matters of true rebuttal could not have been put in before, and to exclude them now would be to deny them their sole opportunity for admission. Hence, while the trial court's determination of what is properly rebutting evidence should be respected, yet, if its nature as such is clear, the proponent does not need the trial court's express consent to admit it as involving a departure from the customary rule.

This will always be the case for evidence offered to *impeach the opponent's witnesses* by way of moral character, bias, self-contradiction, or the like."

6 WIGMORE, *supra*, § 1873 at 678–79 (footnotes omitted).

Hurt's testimony was offered solely as rebuttal evidence. The State did not seek to reopen its case-in-chief in order to allow Hurt to testify, and the testimony was not allowed as part of the case-in-chief. The issue, then, is whether the court abused its discretion in determining that the testimony was proper rebuttal evidence.

As we have indicated, Hurt's testimony constituted nothing more or less than a full confession of guilt by Wright—a classic party admission. On this record, there is no reason to suppose that Hurt's testimony would not have been admissible, as substantive evidence, in the State's case-in-chief. There is nothing to indicate that Wright's alleged admissions were not voluntary; nor is there anything in the record to indicate that Hurt was, in any way, a State agent, thereby implicating the procedural protections of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Wright, indeed, makes no claim to the contrary.[4]

---

**4.** While Wright and Hurt were together in the detention center, they were initially being represented by the same attorney from the Public Defender's Office. At some point, Hurt informed the attorney of his intention to testify against Wright, whereupon the attorney withdrew from Hurt's case and another lawyer was assigned to represent him. In response to Wright's request for discovery, seeking a copy of "all statements made by the Defendant to a State agent" and "the substance of each oral statement and a copy of all reports of each oral statement," the State advised: "The Defendant has ... furnished a statement. A copy of any written statement or summary of any oral statement is attached hereto. The attached report discloses the circumstances under which the statement was obtained."

The only attachment actually indicated in the response was a 5–page police report that was given directly to defense counsel. No attachment appears in the court file, and we therefore cannot tell what was included in that police report. The record reveals that Wright had made both an oral and a written statement to a police detective, who clearly would have been a State agent. Without objection, the written statement made to the detective was marked for identification and discussed in the testimony, but it was never offered into evidence. In

It is clear from the State's proffer during its cross-examination of Wright that it intended to offer Hurt's testimony of Wright's confession as rebuttal evidence. But what was it intended to rebut? In its brief (State's Brief at 6–7), the State tells us its theory:

> "Hurt's testimony can be classified as a contradiction of a new matter brought into the case by the defense. Although the denial of guilt does not constitute new matter presented by the defendant, *see State v. Booze,* 334 Md. at 75 n. 4, 637 A.2d 1214; *State v. Hepple,* 279 Md. at 273, 368 A.2d 445, Wright's testimony here was not merely a denial of guilt; he was stating additionally that he never admitted his guilt to his cellmate. Thus, Wright's testimony clearly injected a new matter into the case. *And Hurt's testimony was clearly a contradiction of Wright's denial that he admitted to Hurt that he had sex with Queen."*

(Emphasis added.)

In laying out its position, the State acknowledges a number of things: (1) that Hurt's testimony was inadmissible to rebut Wright's testimony on direct examination that he did not engage in the alleged conduct;[5] (2) that the sole function of

---

an omnibus motion, Wright moved to suppress any unlawfully obtained confessions, statements, or admissions, but no particular confession, statement, or admission was ever identified. A pretrial hearing was held on one aspect of the omnibus motion, dealing with a medical report, but counsel never raised the issue of any statement Wright made to Hurt and at the end of that hearing expressly abandoned her motion. Although a general objection was made when Hurt was asked about his conversation with Wright, there was no suggestion, much less a claim, that Hurt's testimony would be inadmissible because of any violation of *Miranda.*

**5.** The State's concession on that point is entirely justified. In *State v. Hepple, supra,* 279 Md. at 273, 368 A.2d at 450, we made clear that "it [is] essential that the State, in chief, make a prima facie case against the defendant" and that "[t]he mere denial by a defendant of the State's accusation together with an assertion that he was engaged in different activities than those sought to be proved by the prosecution does not necessarily constitute 'new matter' entitling the State to present additional evidence on the same subject it originally sought to prove." *See also State v. Booze, supra,* 334 Md. 64, at 75 n. 4, 637 A.2d at 1219: "The denial of guilt is not, in any event, new matter presented by the

Hurt's testimony was, instead, to rebut Wright's denial that he confessed to Hurt; (3) that, under our holding in *Bruce v. State,* 318 Md. 706, 569 A.2d 1254 (1990), Hurt's rebuttal testimony was not admissible as substantive evidence but only to impeach Wright's denial that he made the admission; and (4) that the denial sought to be impeached was elicited by the State on cross-examination and was not, therefore, injected affirmatively into the case by Wright.

When viewed in this manner, which is the manner presented to us by the State, the problem emerges: the State has a confession that is admissible in its case-in-chief as substantive evidence of the defendant's guilt; instead of offering it at that stage, the State waits to see if the defendant testifies; if the defendant testifies and denies guilt, the State asks on cross-examination whether the defendant ever made the confession; if the defendant answers affirmatively, the State continues its cross-examination and brings out the entire confession as a prior inconsistent statement; if the defendant denies the confession, the State springs it, in full blossom, in rebuttal, supposedly for the limited purpose of contradicting the defendant's denial that he or she ever made the confession. The State gambles that, upon request, the court may instruct the jury (or instruct itself, in a bench trial) that the confession may be used only to impeach the defendant's statement that he never made the confession and not as substantive evidence of guilt, but with or without such an instruction, the trier of fact hears the substance of the confession at or near the end of the case—after the defense is concluded.

In *State v. Kidd,* 281 Md. 32, 375 A.2d 1105 (1977), and *State v. Franklin,* 281 Md. 51, 375 A.2d 1116 (1977), we addressed the circumstances under which the State could properly use, in rebuttal, a confession rendered *inadmissible* in its case-in-chief because of *Miranda* violations. Following a line of cases

---

defendant. But even if it were, testimony that more properly is adducible in the State's case-in-chief does not explain, reply to, or contradict it." Judge Chasanow overlooks that principle in his dissent, notwithstanding its proper concession by the State.

from other jurisdictions, we construed *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) "as requiring that the issues sought to be impeached by the challenged extrajudicial statement of the accused be initiated by the accused on direct examination" and held that "[t]he prosecution is not permitted to use tainted evidence to impeach an issue which it first solicited on cross-examination." *Kidd, supra,* 281 Md. at 49, 375 A.2d at 1114. We did not directly address in *Kidd* or *Franklin* whether such a confession could be used to rebut a mere denial of guilt asserted by a defendant on direct examination, for that situation was not presented in those cases. There is language in *Harris* suggesting that a tainted confession might be usable for that purpose, although language in *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), relied upon in *Harris,* suggests the contrary.[6] *See also People v. Taylor,* 8 Cal.3d 174, 104 Cal.Rptr. 350, 501 P.2d 918 (1972) and *United States v. Trejo,* 501 F.2d 138 (9th Cir.1974), cited favorably by us in *State v. Kidd,* following the view suggested in *Walder.*

The *Harris/Kidd* line of cases is mentioned principally for the sake of contrast, for they present a quite different situation. The stark contrast, of course, is that, in those situations, the State has a confession that it *cannot* use in its case-in-chief. The concern expressed in *Harris* was that *Miranda*

---

**6.** In *Harris,* the Court noted:

"Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment."

*Harris, supra,* 401 U.S. at 225–26, 91 S.Ct. at 645–46, 28 L.Ed.2d at 4–5. In *Walder,* the Court held:

"Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief."

*Walder, supra,* 347 U.S. at 65, 74 S.Ct. at 356, 98 L.Ed. at 507.

not "be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. New York, supra,* 401 U.S. at 226, 91 S.Ct. at 645, 28 L.Ed.2d at 5. The Court reached a pragmatic balance between two competing public policies—the exclusionary rule precluding the use of confessions obtained in violation of *Miranda,* on the one hand, and not giving defendants a free ride to commit perjury, on the other—and concluded that the deterrent value of the exclusionary rule was sufficiently achieved by making the confession unusable in the prosecution's case-in-chief.

The competing interests here are quite different and nowhere near as equivalent. Precisely because the confession *was* admissible in the State's case-in-chief, there was no prospect of the defendant getting a free ride to commit perjury. Had Hurt testified in the State's case-in-chief, Wright could have been confronted and vigorously cross-examined with respect to that testimony. The State would have had the advantage of Hurt's testimony as both substantive evidence and a prior inconsistent statement by Wright, but Wright would have had the advantage, in presenting his own case, of contradicting and denying Hurt's account. The advantage to the State in withholding the admissible confession for rebuttal was purely a tactical one designed for maximum prejudicial effect: either (1) to discourage the defendant from testifying, even to deny the guilt that the State is obliged to prove beyond a reasonable doubt, or (2), if, as occurred here, the defendant chose to testify, to have the confession dramatically admitted afterward—just prior to jury deliberation.[7]

---

7. Judge Chasanow states in his dissent that "[i]t was only after Wright's attorney brought out on redirect examination of Wright that Wright did not and would not have made any incriminating statements to Hurt, that the prosecutor *had to call Hurt in rebuttal."* (Emphasis added.) That is simply not so. The prosecutor made clear what he intended to do during his cross-examination of Wright. The decision to hold back Hurt—who was listed as a State's witness—until the end was a deliberate one made prior to the close of the State's case-in-chief.

Unlike the *Harris/Kidd* situation, that constitutes an offensive, not a defensive use of the confession, but it is an offensive use that is fundamentally unfair and rests, for its purported validity, on a transparent fiction. It simply defies logic to suggest that, when it really has a choice, the State would prefer to use a confession to impeach a defendant's credibility on what is essentially a collateral point—whether he or she, in fact, made such a statement—than to use it as substantive evidence of guilt. The State's true goal in this case was *not* to suggest to the jury that Wright was not telling the truth when he denied making the confession to Hurt, but rather to sandwich its case around that of the defense and put its most damaging piece of evidence after the defense has concluded its presentation.

That kind of offensive use is wholly inconsistent with the long-standing rule in Maryland that the State put on its case first. It is also inconsistent with our long-standing definition of rebuttal evidence. It is unnecessary, and it is unfair. Although some courts, without much analysis, have allowed the practice, many have not, for the very reasons we find persuasive. In *People v. Bennett,* 393 Mich. 445, 224 N.W.2d 840 (1975), the defendant was charged with murder. His defense was alibi, and he took the stand and denied the shooting. On cross-examination, he was asked whether he had ever told a fellow inmate at the detention center that when he got out, "there was going to be some more murders," and he denied having made such a statement. After the defense rested, the prosecutor called the other inmate who, over objection, testified that the defendant had made the statement. Reversing, the Supreme Court of Michigan held that the State's ploy "misconceives the office of rebuttal," that "[r]ebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case," that "where the prosecutor did not offer this evidence in his case in chief, which he would have had to do if this were to be regarded as an admission or part of a scheme, it did not bear on an issue raised by the People," and that "*[t]he device of eliciting a denial of some statement not*

*properly in the case at the time of denial will not serve to inject an issue."* (Emphasis added.) *Id.* 224 N.W.2d at 842. *See also People v. McGee,* 68 Mich.App. 519, 243 N.W.2d 663 (1976); *People v. Bean,* 89 Mich.App. 626, 280 N.W.2d 614 (1979).

The Arkansas Supreme Court took the same position in *Birchett v. State,* 289 Ark. 16, 708 S.W.2d 625 (1986). The defendant was charged with robbery, and the State's case consisted essentially of eye-witness identifications by the two victims. The defendant testified in his defense and, on cross-examination, was asked whether he had discussed the robbery with his girlfriend and had shown her some jewelry taken in the robbery. He denied having done so. Over objection, the State then produced the girlfriend in rebuttal to testify that the defendant had discussed the robbery with her and had shown her some of the jewelry. The issue on appeal was whether the girlfriend was a proper rebuttal witness, as her name had not been disclosed in discovery. Reversing, the Arkansas court held, at 626–27:

> "It is evident [that the girlfriend] was not a true rebuttal witness. Her testimony was not merely in response to evidence presented by the defense.... Rather, this appears to be an instance of a witness who could have been presented in the state's case in chief being withheld until rebuttal. Her testimony impeached responses drawn from the appellant during his cross-examination. The questions asked of appellant during cross seem clearly designed to manufacture a rebuttal situation for a presentation of the state's evidence that belonged in its case in chief—evidence that was not genuinely in response to anything presented by appellant in his defense. Under these circumstances, the witness should not have been granted rebuttal status."

A similar result was reached in *Lucas v. Commonwealth,* 302 Ky. 512, 195 S.W.2d 90 (1946). The defendant, charged with murder, denied having robbed and killed the victim. On cross-examination, he was asked whether he had made certain inculpatory statements, amounting to a confession, to two people while confined in the county jail, and he denied making

those statements. The State then called the two people in rebuttal to testify as to the statements. Reversing, the court held that the introduction of the confession in rebuttal was "prejudicially erroneous." *Id.* 195 S.W.2d at 92. The confession, it held, "was not introduced for the purpose of [a]ffecting appellant's credibility as a witness, but was substantive evidence and should have been introduced in chief." *Id.* Noting the discretion generally allowed a trial court to permit rebuttal evidence, the court nonetheless concluded that "the Commonwealth should not be permitted to take undue advantage of the defendant and withhold important evidence until near the close of trial, and then introduce it *in the guise of rebuttal evidence.*" *Id.* (emphasis added). The *Lucas* court further noted:

> "In the case before us, it is obvious that the Commonwealth deliberately held the witness back in order to get an advantage. The evidence introduced in rebuttal was purely substantive in nature, and should have been introduced in chief. It was the most damaging evidence offered by the Commonwealth, and *its introduction during the final stages of the trial was, under the circumstances, prejudicial to appellant's rights.*"

*Id.* at 93 (emphasis added). *See also Robinson v. Commonwealth,* 459 S.W.2d 147 (Ky.1970).

For other expositions of this approach, *see Hosford v. State,* 525 So.2d 789, 791 (Miss.1988) ("Manifestly, no party should be permitted as a deliberate trial tactic to decide in advance of trial to withhold a part of his case in chief, but instead attempt to suggest such evidence in cross-examination of the witnesses for the opposing side, and then offer the evidence in rebuttal"); *State v. Manus,* 93 N.M. 95, 597 P.2d 280, 288 (1979) (declaring that "[t]his type of gamesmanship in the conduct of a criminal trial is not to be commended"); *State v. Turner,* 337 So.2d 455 (La.1976); *State v. Smith,* 120 La. 530, 45 So. 415 (1908). In *People v. Rodriguez,* 58 Cal.App.2d 415, 136 P.2d 626 (1943), the court, though reversing a judgment on other grounds, commented as to this issue, at 628–29:

"The People have no right to withhold a material part of their evidence which could as well be used in their case in chief, for the sole purpose of using it in rebuttal.... The alleged confession was offered to establish facts constituting guilt; the impeachment feature was incidental and comparatively unimportant. It was no more proper for the District Attorney to offer the evidence as rebuttal after defendant's denial of the alleged statements, under the pretense that it was offered to impeach the defendant, than it would have been to offer it in rebuttal if the defendant had not been questioned about it at all. It makes no difference here that the testimony as to the confession, aside from being evidence of the fact of guilt, also tended to impeach the defendant."

*Compare Wallace v. State,* 84 Nev. 603, 447 P.2d 30 (1968); *Walker v. State,* 89 Nev. 281, 510 P.2d 1365 (1973); *Cowart v. State,* 579 So.2d 1 (Ala.Crim.App.1990); and *Mitchem v. State,* 503 N.E.2d 889 (Ind.1987).

The State contends that we reached a different conclusion in *Bruce v. State, supra,* 318 Md. 706, 569 A.2d 1254. The defendant there was charged with five counts of murder, arising from a massacre that occurred at an apartment in Landover. The State produced evidence that Bruce did, indeed, participate in the shootings, that, after the shootings, Bruce, two other men who also allegedly participated, and Bruce's girlfriend, Michelle Nelson, drove to Virginia together, that a week later they went to Florida where they split up, and that Bruce eventually went to New York, where he was arrested. Bruce testified in his own defense. He acknowledged being in the apartment but stated that he was not involved in the shootings and left the apartment as soon as the shooting began. He admitted that he and Ms. Nelson drove to Virginia and then flew to Florida but claimed that the trip to Florida had been pre-planned. He said that, after spending four days in Florida, he went to New York.

On cross-examination, Bruce admitted knowing one Kenneth Clee from New York, but he denied telling Clee that he was "on the run from the F.B.I." because of some killings in

Maryland. After the defense rested, the State was allowed to call Clee as a rebuttal witness to testify that Bruce had, indeed, made the statement denied by Bruce. In addressing that issue, this Court stated:

"Appellant's admissions to Clee that he was fleeing from the F.B.I. and had killed a couple of people in Maryland could have been introduced as substantive evidence in the State's case in chief. They constitute admissions of flight and admissions of criminal agency. Instead of offering these statements as part of its case, the State waited, and when Appellant took the witness stand and denied participation in any killings and testified that the trip to Florida was pre-planned, the State attempted to impeach this testimony through the prior inconsistent statements made to Clee. When Appellant denied making the statements to Clee, the State quite properly, in rebuttal, offered the prior inconsistent statement through Clee. We note that Appellant's statement when offered in rebuttal was not admissible at that stage as an admission, but was admissible at that stage as a prior inconsistent statement."

The situation before us in *Bruce* was much more focused than what is before us here. Bruce testified *on direct examination* that his trip to Florida was pre-planned, thereby implying that it did not constitute a consciousness of guilt through flight. He was asked on cross-examination whether he had made a statement inconsistent with that assertion and, when he denied doing so, rebuttal evidence on that limited point was legitimately allowed, to establish the prior inconsistent statement and to suggest to the jury that he was not telling the truth when he asserted that the trip was pre-planned. Admission of Clee's testimony as rebuttal in that setting did not raise the same kinds of issues that are presented when, as here, the State deliberately holds back a full and detailed confession to rebut not the defendant's substantive testimony on direct examination but a statement elicited by the State on cross-examination. To stretch the holding in *Bruce* beyond what was before us there is unnecessary and inappropriate. Had we intended a broader scope, we would at

least have cited some authority and discussed the concerns that are addressed here.

■ In conformance with the long-standing Maryland practice of requiring the plaintiff/State to put on its case first, and for the reasons enunciated in the out-of-State cases cited above, we conclude that the trial court abused its discretion in allowing Hurt's testimony as rebuttal evidence. It was predominantly substantive evidence of guilt that should have been presented by the State during its case-in-chief, and its admission as rebuttal, purportedly to impeach Wright's statement, elicited on cross-examination, that he never made the statement was manifestly wrong and substantially injurious.[8]

### Household Member

Count 3 of the indictment charged Wright with having violated Maryland Code, Article 27, § 35C which, in relevant part, makes it a felony for "[a] parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child or a household or family member" to cause abuse to the child. A "household member" is defined as "a person who lives with or is a regular presence in a home of a child at the time of the alleged abuse."

As worded, the statute subjects to liability for child abuse (1) the child's parent, (2) an "other person" who has perma-

---

8. Judge Chasanow takes us to task for "totally ignor[ing]" Maryland Rule 5–613, which he regards as "directly on point." We have not ignored the Rule; it simply has no bearing on this case. With some modifications, the Rule essentially codifies the common law principle allowing a witness to be examined about and impeached with a prior statement made by the witness that is inconsistent with the witness's trial testimony and, if the conditions of the Rule are satisfied and the statement concerns a non-collateral matter, to offer evidence of the prior inconsistent statement. Rule 5–613 is a rule of *evidence*, not a rule of trial procedure. It is not a license for a plaintiff or the State to withhold critical substantive evidence that should be offered in its case-in-chief and present it, improperly, as rebuttal evidence, to rebut a matter that it has introduced into the case. Neither the Rule as codified nor its common law antecedent precluded the other courts whose opinions we have cited from reaching the same conclusion we reach here.

nent or temporary care or custody of the child, (3) an "other person" who has responsibility for the supervision of the child, (4) a household member, and (5) a family member. The State's position was that, under the circumstances, Wright was either a person having responsibility for Queen's care, custody, or supervision, or that he was a household member. At the conclusion of the State's case, the court, responding to a motion for judgment, found insufficient evidence of the former but, viewing the evidence in a light most favorable to the State, concluded that it sufficed to permit the jury to determine that Wright was a household member in Queen's temporary home. Wright acknowledges that he was a household member of *Shirley's* home but presses the point that Shirley's home was *not* Queen's home—that Queen lived with her mother in Indian Head and was only a temporary occupant in Shirley's abode. The statute, he urges, requires that the defendant be a household member in the child's home.

 The issue is one of statutory construction, and we are thus required to ascertain and effectuate the legislative intent. As noted, the relevant statutory provision—§ 35C(a)(5)—defines "household member" as a person who lives with or is a regular presence in "*a* home of a child at the time of the alleged abuse." (Emphasis added.) Use of the indefinite article "a," as opposed to the definite article "the," itself indicates a legislative recognition that, for purposes of the child abuse statute, a child may have more than one home. Given the context, that is not an unreasonable recognition.

Words like "home," "resident," and "household" are not capable of singular, absolute, generic definition in the law, because they are used in so many different ways and for so many different purposes. They may mean one thing to the census taker, another to an automobile insurer, one thing for voting purposes or for establishing venue in litigation, another for determining where to mail a letter. When the law uses such a word as a substitute for domicile, it may encompass only one, permanent, fixed abode, without regard to where the individual may be actually residing at a given moment. In

other contexts, it may instead mean where the person is staying at the moment. The flexibility in these terms is especially important with respect to children, who are more frequently part of several homes and households. If their parents are separated or divorced, they likely will spend time and have clothes and belongings in the homes of both parents; they may visit grandparents or other relatives for varying periods of time; they may be off to camp during the summer. Where their "home" is at any given time may well depend on what is at stake in ascertaining where their home is.

The term "household member," and with it the term "home," was added to § 35C in 1991. The clear purpose of the addition was to extend the reach of the statute for the greater protection of children, to declare as criminal violations acts of abuse committed against children by a class of persons not then subject to the law. The Legislature obviously recognized that there were people other than parents, custodians, and persons directly charged with the care and supervision of a child who were in a position to commit abuse within the child's home setting, where, because of the status of both the abuser and the child in that setting, the child might be helpless against the predation. We cannot subscribe to Wright's view that the Legislature intended to restrict that protection to only one residential setting, and thus to ignore the reality actually faced by children.

■ Queen's "permanent" home—her domicile—was with her mother. Through consensual arrangements among Queen, Shirley, and their mother, however, Queen was living with Shirley when the criminal activity occurred. Given that Queen, according to her testimony and that of her mother, had been at Shirley's house for about two weeks and was intending to stay another two weeks, it is a fair inference that at least some part of her clothes and other personal belongings were also at Shirley's house; that is where she slept, bathed, and ate; that is where her friend, Tomika, was staying with her. That was the place where, at the time, she formed part of

Shirley's household, a household of which Wright was a member.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIRCUIT COURT FOR CHARLES COUNTY AND REMAND FOR NEW TRIAL; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID BY CHARLES COUNTY.

Concurring and Dissenting opinion by CHASANOW, J., in which RODOWSKY and KARWACKI, JJ., join.

CHASANOW, Judge, concurring and dissenting.

I concur with the portion of the majority opinion titled *Household Member* and the determination that the defendant, Rodney Wright, was a "household member" within the meaning of Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 35C. I dissent from the reversal of Wright's conviction because the trial judge admitted Wright's prior inconsistent statement to his one-time cellmate Louis Hurt. In reversing Wright's rape and child abuse convictions, the majority reaches three illogical and unsupported conclusions. First, the rules for impeaching witnesses and parties by extrinsic evidence of their prior inconsistent statements do not apply to defendants. Second, impeaching evidence of a defendant's partial admission is admissible in rebuttal, but impeaching evidence of a defendant's full and complete confession is not. Third, a defendant's illegally obtained confession is admissible to impeach the defendant on rebuttal, but a defendant's valid confession is not.

## EVEN ASSUMING ERROR THERE IS NO REVERSIBLE ERROR

Before going into my reasons for believing there was no error in admitting Wright's confession as proper rebuttal, I should explain why, even if there was a timing error by the prosecutor in offering the confession on rebuttal, there was no

prejudice that would require a new trial. Wright's confession was admissible even if it was admitted at the wrong stage of trial. A judge has wide latitude in permitting variations in the order of proof, and what admissible evidence may be used in rebuttal is addressed to the sound discretion of the trial judge. Recently in *State v. Booze*, 334 Md. 64, 637 A.2d 1214 (1994), we reiterated the test for reversible error:

> "In the usual case, what constitutes rebuttal testimony rests within the sound discretion of the trial court, whose ruling may be reversed only when it constitutes an abuse of discretion, *i.e.*, it has been shown to be both 'manifestly and substantially injurious.' " (Citations omitted).

334 Md. at 68, 637 A.2d at 1216 (quoting *Mayson v. State*, 238 Md. 283, 289, 208 A.2d 599, 602 (1965)). Since the defendant's confession is concededly admissible, any timing error in admitting it in rebuttal rather than in the case-in-chief was not "manifestly and substantially injurious." *Id.; see also Goldsby v. United States*, 160 U.S. 70, 74, 16 S.Ct. 216, 218, 40 L.Ed. 343, 345 (1895) ("It was obviously rebuttal testimony. However, if it should have been more properly introduced in the opening, it was purely within the sound judicial discretion of the trial court to allow it, which discretion, in the absence of gross abuse, is not reviewable. . . .").

The majority acknowledges there was no evidence improperly admitted in the instant case, but opines that, because the jury heard Hurt's testimony in the rebuttal phase of trial, the jury gave it special and undue impact. According to the majority, "[t]he State's true goal in this case was *not* to suggest to the jury that Wright was not telling the truth when he denied making the confession to Hurt, but rather to sandwich its case around that of the defense and put its most damaging piece of evidence after the defense has concluded its presentation." 349 Md. 334, 349, 708 A.2d 316, 323 (1998). This is unwarranted and inaccurate speculation. Hurt was not the last rebuttal witness and to say that the uncorroborated testimony of a jailhouse snitch who seeks sentencing concessions for testifying against a cellmate is more damaging than the corroborated testimony of the child rape victim borders on

the absurd. Further, there is nothing in the facts that indicates the timing of the admission of the confession was manifestly and substantially injurious.

## ADDITIONAL FACTS

Medical evidence was presented in the State's case-in-chief that the victim had a tear to her hymen indicating only one penetration. Wright's evidence implied that the victim had intercourse with her boyfriend. By late afternoon of the first day of trial, both the State and the defense had concluded their cases, and the judge proposed recessing for the day. The State, however, implored the judge to allow Hurt to testify before recessing for the day. The judge complied and permitted Hurt to testify. The next morning the last rebuttal witness was called. He was the victim's boyfriend, and he testified that he and the victim had never had intercourse. The State obviously did not want Hurt as its last witness—the State did not even want Hurt's testimony on the last day of trial. In fact, there is some indication that the State did not want to call Hurt at all. In redirect examination of the defendant, the defense attorney may have been trying to goad the prosecutor into calling Hurt by repeatedly having Wright testify he would not have made any incriminating statements to Hurt. Redirect examination of Wright included the following:

"[Defense Counsel:] Now, Mr. Hurt—I am sorry, Mr. Wright, while you were being held at the detention center, you spoke with Mr. Hurt. Correct?

[Defendant:] Correct.

[Defense Counsel:] And was Mr. Hurt your [cellmate]?

[Defendant:] Yes, he was.

[Defense Counsel:] And what was your relationship with Mr. Hurt while you were in the detention center?

[Defendant:] Enemy.

[Defense Counsel:] You and he did not get along?

[Defendant:] From the beginning.

[Defense Counsel:] Would you consider him a confidant, someone you tell stuff to?

[Defendant:] Not at all.

[Defense Counsel:] Did you know Mr. Hurt before you were in the detention center?

[Defendant:] Of him.

[Defense Counsel:] Did you know him, personally?

[Defendant:] I knew of him. Like, I know him, I seen him, but I didn't go near him, didn't fool with him or talk to him.

[Defense Counsel:] Mr. Wright, you are going to have to listen to my question. Did you know Mr. Hurt, personally, before you went to the detention center?

[Defendant:] Not really, not personally.

[Defense Counsel:] Had you met him before?

[Defendant:] I had.

[Defense Counsel:] Had you talked to him before?

[Defendant:] No.

[Defense Counsel:] How did you meet him?

[Defendant:] I saw him somewhere, I saw him at a store. That is the only way I knew him.

[Defense Counsel:] Did you know him by name?

[Defendant:] Yes.

[Defense Counsel:] Had you ever been introduced to him?

[Defendant:] No.

[Defense Counsel:] Now, you indicated when Mr. Jones asked you about the conversations with Mr. Hurt, that you told him the girl's mother didn't like you.

[Defendant:] Yes, I did.

[Defense Counsel:] Did you ever tell him what your side of what occurred was?

[Defendant:] No, I just told him to mind his business."

The defense attorney could have simply left the matter with Wright's statement on cross-examination that he made no incriminating admissions to Hurt. Instead, she dwelled on the

issue in re-direct examination of Wright. This may have been done to goad the prosecutor into calling Hurt because in balance his testimony may have been more helpful to the defense than to the State. Hurt's credibility was at least suspect because he was incarcerated for carjacking and armed robberies and may have been hoping for a reconsideration of the eighteen-year sentence he received for those crimes. What made Hurt's testimony helpful to the defense was that on cross-examination by defense counsel Hurt acknowledged that he was a good friend of the victim's sister Shirley Thompson. Hurt had Ms. Thompson's phone number and spoke to her fairly frequently during the period she lived with the defendant. Ms. Thompson told Hurt that she was afraid of Wright. Thus, Hurt supplied a motive for Ms. Thompson to convince her young sister and Hurt to falsely incriminate Wright. This may also have been a reason why the prosecutor might have been reluctant to call Hurt unless goaded into doing so by the defense.

Offering Hurt's testimony in rebuttal, rather than in the State's case-in-chief, was clearly not manifestly and substantially injurious. The majority acknowledges that Hurt's testimony was admissible and that the only error was that the jury heard it as rebuttal in the afternoon rather than during the State's case-in-chief in the morning of the first day of a two-day trial. I do not see any justification for requiring the victim to again undergo the trauma of disclosing her rape and sexual ordeal to a courtroom of strangers in order to force the State to present the exact same witnesses and the exact same evidence, but in a slightly different order.

THERE IS AN EVIDENTIARY DISTINCTION BE-TWEEN CONFESSIONS AS ADMISSIONS AND CONFESSIONS AS PRIOR INCONSISTENT STATE-MENTS

The majority includes a very relevant quotation from WIG-MORE:

"For matters *properly not evidential until the rebuttal,* the proponent has a *right* to put them in [at] that time, and they are therefore not subject to the discretionary exclusion of the trial court. Matters that should have been put in at first may by that discretion be refused later, because this is but the denial of a second opportunity. But matters of true rebuttal could not have been put in before, and to exclude them now would be to deny them their sole opportunity for admission. Hence, while the trial court's determination of what is properly rebutting evidence should be respected, yet, if its nature as such is clear, the proponent does not need the trial court's express consent to admit it as involving a departure from the customary rule.

This will always be the case for evidence offered to *impeach the opponent's witnesses* by way of moral character, bias, self-contradiction, or the like." (Emphasis in original) (footnotes omitted).

6 J. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1873, at 678–79 (Chadbourn ed. 1976). Unfortunately, after this quotation, the majority seems to lose sight of the meaning of the quotation and confuse two separate concepts: 1). rebuttal evidence offered in contradiction to evidence offered by the defense; and 2) rebuttal evidence offered to impeach defense witnesses. *See* majority opinion, 349 Md. at 345–47 and n. 5, 708 A.2d at 321–22 and n. 5. Rebuttal evidence offered to contradict the defense's evidence is restricted to new issues raised by the defense, and the State cannot contradict the defense's evidence or testimony to the effect that the defendant is innocent by offering in rebuttal additional evidence that the defendant is guilty and that could have been admitted in the State's case-in-chief. Rebuttal by contradiction is limited to new matters brought out in the defense's case-in-chief. But there is a separate and distinct rule pointed out by the WIGMORE quotation and that rule is that rebuttal evidence is *always* proper "*to impeach the opponent's witnesses* [including the defendant] by way of moral character, [which would include prior convictions for crimes affecting credibility, etc.],

bias, self-contradiction, [which includes prior inconsistent statements], or the like." 6 J. WIGMORE, *supra*, at 678–79.

I am in full agreement with the majority that, as a general rule, the State must put all of its substantive evidence in its case-in-chief and may not hold back substantive evidence for use as rebuttal. That general rule, however, was not violated in the instant case. What the majority fails to recognize is that a defendant's oral confession may be used in one of two ways. First, a confession is an admission by a party opponent which can be used by the State as substantive evidence in its case-in-chief. Second, if the defendant testifies in a manner inconsistent with the oral confession, the confession may be used as a prior inconsistent statement to impeach the defendant. If used in this manner, the oral confession is only admitted for impeachment and not as substantive evidence.

When a defendant is cross-examined about a confession and admits making the statement, the defendant may explain the inconsistencies. If, however, the defendant denies making the oral inconsistent statement or cannot remember the statement and if the statement is not collateral, then the State is permitted to put in extrinsic evidence of the confession, not as substantive evidence, but as impeachment of the defendant's testimony. *See Bruce v. State*, 318 Md. 706, 729, 569 A.2d 1254, 1266 (1990). The purpose of the rebuttal testimony is, as McCORMICK states:

> "The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements." (Footnote omitted).

1 JOHN W. STRONG, McCORMICK ON EVIDENCE § 34, at 114 (4th ed. 1992).

## THE APPLICABILITY OF MARYLAND RULE 5–613

We have a court rule of evidence that is directly on point and specifically designed to be applicable to statements by

parties but which the majority claims has no bearing on the instant case. Maryland Rule 5–613 is headed "Prior statements of witnesses" and provides:

"(a) *Examining witness concerning prior statement.* A party examining a witness about a prior written or oral statement made by the witness need not show it to the witness or disclose its contents at that time, provided that before the end of the examination (1) the statement, if written, is disclosed to the witness and the parties, or if the statement is oral, the contents of the statement and the circumstances under which it was made, including the persons to whom it was made, are disclosed to the witness and (2) the witness is given an opportunity to explain or deny it.

(b) *Extrinsic evidence of prior inconsistent statement of witness.* Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is not admissible under this Rule (1) until the requirements of section (a) have been met and the witness has failed to admit having made the statement and (2) unless the statement concerns a non-collateral matter."

The Maryland rule differs from its federal counterpart Federal Rule of Evidence 613 as follows:

## "COMPARISON TO FEDERAL RULE

EXPLANATION: [Brackets] indicate matter deleted from the Federal Rule and Underlining indicates matter added to the Federal Rule.

Rule 5–613. PRIOR STATEMENTS OF WITNESSES

(a) Examining Witness Concerning Prior Statement

[In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.] A party examining a witness about a prior written or oral statement made by the witness need not show it to the witness or disclose its contents at that time, provided that before the end of the

examination (1) the statement, if written, is disclosed to the witness and the parties, or if the statement is oral, the contents of the statement and the circumstances under which it was made, including the persons to whom it was made, are disclosed to the witness and (2) the witness is given an opportunity to explain or deny it.

(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness

Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is not admissible under this Rule (1) until the requirements of section (a) have been met and the witness has failed to admit having made the statement and (2) unless the statement concerns a non-collateral matter. [unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).]"

MARYLAND RULES OF EVIDENCE at 5–613–4 & 5 (Howard S. Chasanow ed. 1994).

Both the Maryland rule and the federal rule deal with impeaching a witness's testimony by a prior inconsistent written or oral statement of the witness. Both rules apply to prior inconsistent statements of all witnesses, including parties, and both apply in civil as well as criminal cases. Both rules permit extrinsic evidence of the witness's prior statement to be introduced in evidence to impeach the witness's testimony if certain conditions are met. Maryland Rule 5–613(b) expressly permits extrinsic evidence of a party's prior inconsistent statements, as well as a witness's prior inconsistent statements. In fact, Maryland modified the federal rule counterpart to give more protections to parties impeached by their prior inconsistent statements.

One of the primary differences between the two rules deals with the admissibility of extrinsic evidence of a party's prior inconsistent statement. Under the federal rule, after a party

testifies, extrinsic evidence of the party's prior inconsistent statement is admissible and the party need not be afforded the opportunity to explain or deny the statement; under the Maryland rule a party must be afforded an opportunity to explain or deny a prior inconsistent statement before extrinsic evidence of the statement is admissible. In the instant case, the requirements of the Maryland rule were met. Professor Lynn McLain, who assisted in drafting the Maryland Rules of Evidence, explains the difference between the Maryland and the federal rules of evidence in the use of a party's prior inconsistent statements.

> "Section (b) of the Maryland Rule omits the federal rule's provision that the requirements of (1) giving the witness an opportunity to explain or deny his or her statement and (2) giving the opposing party an opportunity to question the witness about it, do not apply to admissions of a party opponent as defined in Fed.R.Evid. 801(d)(2) [Md. Rule 5–803(a)]. If the opposing party's statement is offered as substantive evidence, Rule 5–803(a), not Rule 5–613, is clearly the applicable rule. Rule 5–613(b) addresses only evidence offered 'under this Rule.' If an opposing party is *impeached* under Rule 5–613, the same rules apply as to any other witness." (Emphasis in original).

LYNN McLAIN, MARYLAND PRACTICE, MARYLAND RULES OF EVIDENCE § 2.613.3, at 169 (1994 ed.).

The majority states it is not ignoring Md. Rule 5–613, but that the rule "simply has no bearing on this case." 349 Md. at 354 n. 8, 708 A.2d at 326 n. 8. The reason given is "Rule 5–613 is a rule of *evidence,* not a rule of trial procedure." *Id.* (emphasis in original). If on cross-examination a defendant is asked about and denies making a prior inconsistent statement, then Rule 5–613(b) expressly allows the prosecutor or plaintiff to prove the prior inconsistent statement to impeach the defendant's trial testimony. The prosecution or plaintiff cannot interrupt the defendant's case to offer extrinsic evidence of the defendant's prior inconsistent statement, but must wait for rebuttal to do so. No prior decision of this Court has ever even remotely suggested that introducing a prior inconsistent

statement violates any rule of trial procedure, let alone the vague unidentified rule of trial procedure that supercedes our codified rules of evidence.

According to the majority, if a plaintiff or the State does not introduce all of a defendant's statements in the case-in-chief it forfeits the right to impeach a defendant by the self-contradiction of those prior inconsistent statements. The rebuttal evidence of Wright's confession met all of the requirements of Md. Rule 5–613(b) and was unquestionably admissible under that rule. Nothing in the "rules of trial procedure" justifies ignoring the rules of evidence and giving defendants immunity from impeachment under Rule 5–613(b). The rules of evidence are included in, not superceded by, the rules of trial procedure.

## *BRUCE v. STATE* IS CONTROLLING AND MADE NO DISTINCTION BETWEEN FULL CONFESSIONS AND PARTIAL CONFESSIONS

*Bruce v. State, supra,* is a fairly recent case directly on point. In *Bruce,* the defendant Kirk Bruce was convicted of five counts of first-degree murder and sentenced to death. One of the issues in Bruce's appeal was the admissibility in the State's rebuttal of a confession Bruce made to Kenneth Clee. A unanimous Court affirmed Bruce's conviction. In describing the facts and our holding we said:

"After the defense rested its case, the prosecutor asked to call a rebuttal witness, Kenneth Clee. Over objection, Clee was permitted to testify that in March or April of 1988, he had a conversation with Appellant in New York, and during that conversation Appellant admitted that '*he had killed a couple of people in Maryland, and that he was wanted by the F.B.I.*'

Appellant claims that the trial judge erred in admitting Clee's testimony as rebuttal evidence. *Appellant's admissions to Clee that he was fleeing from the F.B.I. and had killed a couple of people in Maryland could have been introduced as substantive evidence in the State's case in*

*chief. They constitute admissions of flight and admissions of criminal agency.* Instead of offering these statements as part of its case, the State waited, and when Appellant took the witness stand and denied participation in any killings and testified that the trip to Florida was pre-planned, the State attempted to impeach this testimony through the prior inconsistent statements made to Clee. *When Appellant denied making the statements to Clee, the State quite properly, in rebuttal, offered the prior inconsistent statement through Clee.* We note that Appellant's statement when offered in rebuttal was not admissible at that stage as an admission, but was admissible at that stage as a prior inconsistent statement to impeach Appellant's testimony. Appellant could have requested a limiting instruction that the prior inconsistent statement was admissible only to impeach Appellant's testimony, and not as substantive evidence, but he did not do so, and the trial judge ordinarily is not required to give a limiting instruction in the absence of a request. *See Mulcahy v. State,* 221 Md. 413, 158 A.2d 80 (1960). *See also Tinnen v. State,* 67 Md.App. 93, 100–01, 506 A.2d 656, 659–60 (1986)." (Emphasis added) (footnote omitted).

*Bruce,* 318 Md. at 728–29, 569 A.2d at 1265–66.

*Bruce* is indistinguishable from the instant case and should be controlling. Yet, instead of following *Bruce,* the majority attempts to draw distinctions that do not exist. As any evidence text will explain, the purpose of a prior inconsistent statement is to impeach the witness's trial testimony by showing that, on one or more previous occasions, the witness made statements that contradict the trial testimony and, therefore, the testimony is less worthy of belief. McCORMICK states that impeachment by a prior inconsistent statement "is an attack by proof that the witness on a previous occasion has made statements inconsistent with his present testimony." 1 JOHN W. STRONG, McCORMICK ON EVIDENCE § 33, at 112 (1992). The majority seems to suggest the purpose of a prior inconsistent statement is to impeach the witness by showing he or she told a lie when the witness denied making the statement.

Somehow the majority totally misconstrues the purpose of the prior inconsistent statements when it attempts to distinguish *Bruce* and the instant case by saying:

"Admission of Clee's testimony as rebuttal in that setting did not raise the same kinds of issues that are presented when, as here, the State deliberately holds back a full and detailed confession to rebut not the defendant's substantive testimony on direct examination but a statement elicited by the State on cross-examination."

349 Md. at 353, 708 A.2d at 325. The majority goes on to state the purpose of Hurt's rebuttal testimony was "to impeach Wright's statement, elicited on cross-examination, that he never made the statement." 349 Md. at 354, 708 A.2d at 326. That was not the purpose for which the trial judge admitted the prior inconsistent statement in the instant case, not the purpose for which the inconsistent statement was admitted in *Bruce*, and is never the purpose for admitting a prior inconsistent statement. Hurt's testimony was not admitted to show Wright committed perjury when he denied making a statement to Hurt; it was admitted to show Wright's trial testimony was subject to doubt because it was inconsistent with prior statements made by him.

According to the majority, Bruce's oral confession to Clee was properly admitted in rebuttal to impeach Bruce's trial testimony but Wright's was not admissible because Wright's statement was a full and detailed confession while Bruce's was not. This is a distinction without a difference and careful comparison of the two statements shows they are equally inculpatory. In *Bruce*, what was admitted on rebuttal was Clee's testimony that Bruce confessed that he killed a couple of people in Maryland. What we said in *Bruce* is what we have said in several prior cases that, if a defendant takes the witness stand and denies committing the crime or some element of the crime, the defendant like any other witness may be impeached by his or her prior inconsistent statements. *See, e.g., State v. Kidd*, 281 Md. 32, 46–47 n. 8, 375 A.2d 1105, 1114 n. 8, *cert. denied*, 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d

498 (1977). It does not matter whether those statements were full confessions or merely partially incriminating admissions that contradict the defendant's trial testimony. The State does pay a penalty for admitting an oral confession only as impeaching evidence in rebuttal, rather than admitting the confession in its case-in-chief. The penalty is that the statement is only admissible as impeachment, not substantive evidence, and upon request, the defendant is entitled to a limiting instruction to the jury that the confession is not substantive evidence of guilt, but is only admissible for the purpose of assessing the defendant's credibility. *Bruce*, 318 Md. at 729, 569 A.2d at 1266.[1] The defendant is entitled to the same type of limiting instruction if, instead of using a prior inconsistent statement, the State uses a prior conviction or any other permissible method to impeach a defendant's credibility.

A careful comparison of *Bruce* and the instant case would indicate the two cases are indistinguishable and that Bruce's admissions at trial were at least as much a full and detailed confession as are Wright's statements in the instant case. Wright was charged with, and convicted of, second-degree rape and second-degree sexual offense based on age disparity and was also convicted of child abuse. His criminal acts were having vaginal intercourse as well as committing a sexual act on a child member of his household, who was under fourteen years of age when he was four or more years older than the victim. In his statement to Hurt, Wright never admitted that the victim was a child or that she was under fourteen, nor did he admit his own age. In addition, Wright was convicted of child abuse, and his statement to Hurt did not admit the vital element that Wright was a household member. By contrast,

---

1. A witness's prior inconsistent signed written or recorded confessions are admissible not just to impeach but also as substantive evidence under Maryland Rule 5–802.1(a). Since, however, these are exhibits that can go into the jury room, I would doubt that the majority would hold that a defendant is "manifestly and substantially" injured because a recorded conversation that goes into the jury room was introduced into evidence at the end of, rather than at the beginning of, the trial.

in *Bruce,* the defendant's statement admitted on rebuttal was that he "had killed a couple of people in Maryland." Bruce was on trial for multiple murders in Maryland. The confession by Bruce was more of a full confession than the confession in the instant case. I understand, however, why the majority would attempt to distinguish an indistinguishable case rather than overrule *Bruce* and hold that the same kind of impeaching rebuttal evidence that a unanimous Court recently held was admissible in a capital murder trial is inadmissible in the instant case.

## THE MAJORITY MISINTERPRETS PRIOR MARYLAND CASES

Two illustrative cases that preceded our holding in *Bruce* and clearly do not support the majority's position in the instant case are the "back to back" opinions in *State v. Kidd, supra,* and *State v. Franklin,* 281 Md. 51, 375 A.2d 1116 (1977), *cert. denied,* 434 U.S. 1018, 98 S.Ct. 739, 54 L.Ed.2d 764 (1978). I believe the majority misreads these two cases and the line of cases they follow when the majority states:

> "The *Harris/Kidd* line of cases is mentioned principally for the sake of contrast, for they present a quite different situation. The stark contrast, of course, is that, in those situations, the State has a confession that it *cannot* use in its case-in-chief."

349 Md. at 347, 708 A.2d at 322–23.

In the *Kidd* line of cases referred to by the majority, we said a defendant's confessions may be admissible in rebuttal to impeach the defendant's testimony *even if we assume* the confessions were obtained in violation of the defendant's *Miranda* rights. We certainly did not say confessions were admissible in rebuttal *because* they violated *Miranda* as the majority now seems to suggest. In *Kidd,* the defendant was charged with, and convicted of, the statutory offense of possessing heroin in sufficient quantity to indicate an intent to distribute. The State's case-in-chief showed Kidd was standing on a street corner and fled upon the arrival of police

officers. Two officers who pursued Kidd testified that, during Kidd's flight, he discarded eighteen bags of heroin. In his defense, Kidd testified and denied having discarded the heroin. On cross-examination, the prosecutor asked Kidd "[d]id you ever tell Officer Winkler that you were a one bag habit man"? In response, Kidd denied the conversation. In rebuttal, the State called Officer Winkler who testified, over objection, that Kidd had admitted being a heroin user and having a one-bag-a-day habit. We reversed Kidd's conviction because the issue of whether Kidd was a user was irrelevant and prejudicial and could not be interjected by the State. We did, however, say a number of things involving the issue in the instant case because they were relevant to the companion case of *State v. Franklin*, In *Kidd*, we first noted:

"Prior to *Miranda*, the opinions of this Court reflected *no distinction* as to the rules regarding admissibility between confessions or admissions of a defendant offered by the prosecution to prove its case in chief and those offered to impeach a defendant's testimony at trial." (Emphasis added).

*Kidd*, 281 Md. at 39, 375 A.2d at 1110. We further reiterated the general rules for impeaching the testimony of any witness and, by the context of the discussion, indicated what had always been the law of evidence that those rules were applicable to all witnesses including criminal defendants. We said:

"We observe that the general rule is that the credit to be given a witness may be impeached by showing that he has made statements which contradict his testimony in respect to material facts (but not in respect to facts which are collateral, irrelevant or immaterial), provided a proper foundation has been laid. The foundation is laid by interrogating the witness as to when, the place at which, and the person to whom such contradictory statements were made. This is but fair and just in order that the witness may be enabled to refresh his recollection in regard to such statements, and be afforded the opportunity of making such explanation as he may deem necessary and proper. *If the witness denies making the designated statement or asserts*

*that he does not remember whether he made it, the foundation contemplated by the general rule for the introduction of the statement has been satisfied.*

No question was raised in the case *sub judice,* below or on appeal, regarding the laying of the foundation for the introduction of the impeaching statement." (Emphasis added) (citations omitted).

*Kidd,* 281 Md. at 46–47 n. 8, 375 A.2d at 1114 n. 8.

In the companion case of *State v. Franklin, supra,* the defendant Stephen Franklin was convicted of attempted robbery with a dangerous and deadly weapon. The alleged victim of the robbery was a cab driver who shot Franklin in the shoulder. Franklin went to a hospital emergency room for treatment of the gunshot wounds inflicted by the cab driver. When Officer Grimes responded to a call from the hospital emergency room, he interviewed Franklin who was dressed in hospital garb. At the defendant's trial, the officer was called as a witness in the State's case-in-chief and started to recount the defendant's "admissions"; there was an objection that the defendant was not given his *Miranda* warnings. Even though the defendant was apparently not in custody during the interview in the hospital emergency room, the prosecutor "withdrew" his attempt to introduce the defendant's statements "to avoid the problem." There was no reason to believe that the defendant's "admissions" were inadmissible in the State's case-in-chief. Franklin testified in his own defense and denied that there was any attempted robbery; he also gave his own version of what he told the police. In rebuttal, the State called Officer Grimes who testified to the statements made by the defendant at the hospital. That testimony differed from the version given by the defendant.

We characterized the question before the Court as follows: "The issue for decision is the propriety of the admission of Franklin's extrajudicial statement[s] for the purpose of impeaching his credibility." 281 Md. at 57, 375 A.2d at 1119. We held that the defendant's statements to Officer Grimes were properly admitted on rebuttal. The majority somehow

reads *Franklin* as permitting the rebuttal testimony of Officer Grimes only because the State had a confession that it could not use in its case-in-chief due to *Miranda* violations. This is incorrect. At the time the defendant made the admissions he was not under arrest, not taken into custody, and was in a hospital gown being treated at a hospital. The record reflects that there was no custodial interrogation and, thus, no *Miranda* violations; certainly there was no judicial finding that the confession was inadmissible in the State's case-in-chief. The State chose not to offer the confession in its case-in-chief to avoid any problem and waited to use it on rebuttal. What we said in *Franklin* was that, even if we assumed the facts in the light most favorable to Franklin, his statements were still admissible to impeach his credibility in rebuttal. We held that Franklin's admissions were admissible in rebuttal *even if we assume* there were *Miranda* violations; we did not hold that his admissions were admissible rebuttal *because* we found that there were *Miranda* violations. We said:

> "For the purpose of decision here we make two assumptions consistent with Franklin's initial objection to the admission of his statements. First, we assume that Franklin's extrajudicial statement was obtained during a custodial interrogation within the contemplation of *Miranda*. Second, we assume that there was no compliance with the *Miranda* dictates. With these assumptions, we apply to the case before us the *Harris–Hass* limitation of *Miranda* with respect to the impeachment exception. Franklin's extrajudicial statements were offered and received for the purpose of impeaching his credibility specifically. There was a direct contradiction as to the circumstances of the shooting between his testimony at trial and the impeaching statements. The issue was initiated by Franklin during his direct examination when he gave his version of those circumstances." (Citations omitted) (footnotes omitted).

*Franklin*, 281 Md. at 58–59, 375 A.2d at 1120.

To misread *Franklin*'s clear holding that a defendant's prior inconsistent statements are admissible to impeach *even assuming* there are *Miranda* violations as somehow meaning

a defendant's statements are admissible in rebuttal to impeach *only if* there are *Miranda* violations is to grossly distort that holding. Surely the Court must recognize that something we are willing to assume when reaching a decision is generally a factor that is irrelevant to the decision.

What we held in *Franklin* is what we held in *Bruce;* that a defendant's prior inconsistent statement may be offered by the State in rebuttal, regardless of *Miranda* compliance or non-compliance, to impeach the defendant's credibility in the same manner that any other witness may be impeached by his or her prior inconsistent statements. We also recognized that the State pays a price for not admitting an oral confession in its case-in-chief because, if a defendant's confession is only offered in rebuttal to impeach the defendant's credibility, the confession is not admitted as substantive evidence and, upon the defendant's request, the jury should be so instructed. For over a century, this Court has consistently held that the evidentiary rules for impeachment of a defendant by extrinsic evidence of admissible prior inconsistent statements are the same as the rules regarding impeachment of any other witness or party by extrinsic evidence of admissible prior inconsistent statements. *See Garlitz v. State,* 71 Md. 293, 307, 18 A. 39, 43 (1889) (concluding that when the defendant testified "at variance with former admissions or statements by him, such former admissions or statements were clearly admissible in rebuttal for the purpose of contradiction and impeachment"). The Court of Special Appeals has reached the same conclusion. In *Reed v. State,* the Court of Special Appeals held that the defendant's statements to police after receiving *Miranda* warnings were proper to impeach an explanation subsequently offered by the defendant at trial. Writing for the Court of Special Appeals, Judge Karwacki stated:

"It is well settled that the credibility of the trial testimony of a witness, whether or not a party litigant, may always be challenged by confronting him with prior extra judicial statements he has made which are inconsistent with his testimony on an issue relevant to the trial."

*Reed,* 68 Md.App. 320, 327, 511 A.2d 567, 570, *cert. denied,* 307 Md. 598, 516 A.2d 569 (1986), *cert. denied,* 481 U.S. 1005, 107 S.Ct. 1627, 95 L.Ed.2d 201 (1987). Not one Maryland case is cited by the majority that holds a defendant's prior inconsistent statement cannot be used to impeach, and no Maryland case has held that if the defendant denies making a prior inconsistent statement, the prior inconsistent statement cannot be offered by the State on rebuttal.

## THE CASES CITED FROM OTHER JURISDICTIONS ARE NOT RELEVANT

Just as I believe the Maryland cases cited by the majority do not support its holding, I believe that the cases cited from other jurisdictions are distinguishable and do not support the majority's holding. Turning to the cases cited by the majority, I will start with the majority's lead case of *People v. Bennett,* 393 Mich. 445, 224 N.W.2d 840 (1975). In that case the defendant was on trial for murder, and he took the stand and testified to an alibi. On rebuttal a fellow inmate, Mathew Williams, was called and testified that the defendant said to him that "he had another fellow to kill when he get[s] out." What the court held was that this was improper rebuttal because it was collateral, prejudicial, and not relevant to any issue in the case. The court stated:

"While we hold that the testimony of Williams was not proper rebuttal, we do not wish to be understood as holding that such testimony would properly be admissible in the case in chief as an admission. We have doubts that such an equivocal statement as 'I have another fellow to kill when I get out' may be treated as an admission to the charge that he killed Jimerson.

We hold, therefore, that it was reversible error to admit the testimony of Mathew Williams as rebuttal evidence."

*Bennett,* 224 N.W.2d at 842.

Perhaps the best indication of *Bennett's* inapplicability is that, twenty years after *Bennett,* the Supreme Court of Michigan held *Bennett* was inapposite in a case more analogous to

the case before this Court. In *People v. Figgures,* 451 Mich. 390, 547 N.W.2d 673 (1996), the defendant was charged with the felonious breaking and entering of his ex-wife's residence. At issue was the defendant's intent and hostility toward his ex-wife. The court summed up the relevant facts, as well as indicated *Bennett*'s inapplicability, when they stated:

"On direct examination, defendant specifically stated that he was in the process of reconciling with complainant. Consequently, whether he was reconciling with her or harassing her at this time was already a part of the case *before* cross-examination. This line of questioning by the prosecutor did not inject a new issue into the case, instead, it served as the basis for a thorough and proper exploration regarding the veracity of defendant's prior testimony. As a result, the dissent's citation of *[People v.] Losey [*413 Mich. 346, 320 N.W.2d 49 (1982)]* and *Bennett* is inapposite." (Emphasis in original).

*Figgures,* 547 N.W.2d at 678. The court also indicated that even if the evidence could have been offered by the State in its case-in-chief, that would not prevent its introduction on rebuttal.

"The question whether rebuttal is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross-examination.

Contrary to the dissent's insinuation, the test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant."

*Figgures,* 547 N.W.2d at 677–78; *see also Hosford v. State,* 525 So.2d 789, 791 (Miss.1988) ("[Rebuttal evidence of defendant's admission to] physical abuse of his wife or stepchildren was not simply procedural error, but was also manifestly incompetent at any stage of the trial proceedings. It was evidence of other misconduct which had no probative value on the issue before the jury, and which was inflammatory and

extremely prejudicial."). The holdings in *Bennett* and *Hosford* should be the same in Maryland since, under Maryland Rule 613(b), extrinsic evidence of prior inconsistent statements is not admissible unless the statement concerns a non-collateral matter. The statements in both cases were collateral and not proper rebuttal.

*People v. Bean*, 89 Mich.App. 626, 280 N.W.2d 614 (1979), is similar to several other cases cited by the majority and concerns the improper *use* not the improper *admission* of the defendant's impeaching statements introduced on rebuttal. As I have previously indicated, our cases have held that, if the State does not introduce an oral confession in its case-in-chief and instead waits to use it on rebuttal, the confession can only be used to impeach the defendant's credibility and not as substantive evidence. *Bean* and several other cases cited by the majority actually support my dissent because they stress the importance to the State of using a confession as substantive evidence in the State's case-in-chief and not waiting to use a confession in rebuttal to impeach a defendant's trial testimony. Bean was charged with breaking and entering a dwelling. At trial the prosecution's eyewitnesses indicated they saw Bean break into the dwelling and remove a television set. Bean testified he did not break into the dwelling, but did help a friend move a television set from a different apartment. In rebuttal, the prosecution introduced Bean's confession to the effect that he did not break into the dwelling, but he was an accomplice to the breaking and entering. The case was a court trial, and the judge convicted Bean on the basis that his own confession was sufficient to establish that Bean was guilty by aiding and abetting the breaking and entering. The appellate court reversed stating:

> "This statement, which interjected an issue of aiding and abetting a breaking and entering, did not bear on an issue raised by the prosecution in its case in chief.
>
> * * *
>
> [T]he prosecutor employed the exact device condemned in *Bennett, supra,* to establish the basis to admit defendant's

statement as rebuttal. Furthermore, the trial court based its entire finding that the defendant aided and abetted the breaking and entering on the improperly admitted statement. Consequently, we conclude that the error in the instant case was prejudicial to the defendant and reverse."

*Bean*, 280 N.W.2d at 616.

Other cited cases reach similar results and reverse convictions because the "rebuttal" impeaching evidence is actually used as substantive evidence. *Lucas v. Commonwealth*, 302 Ky. 512, 195 S.W.2d 90, 92 (Ct.App.1946) ("The only direct evidence of his guilt was the alleged confession. This was not introduced for the purpose of effecting appellant's credibility as a witness, but was substantive evidence and should have been introduced in chief."); *see also People v. McGee*, 68 Mich.App. 519, 243 N.W.2d 663 (1976); *Robinson v. Commonwealth*, 459 S.W.2d 147 (Ky.Ct.App.1970). I agree with the results in these cases and would note that, in Maryland, impeaching oral confessions cannot be used as substantive evidence and, upon request, the defendant is entitled to an instruction that statements admitted on rebuttal to impeach may not be considered as substantive evidence of guilt. Thus, in the cited cases, it was the use of impeaching prior inconsistent statements as substantive evidence that was the real prejudice to the defendants.

In *People v. Rodriguez*, 58 Cal.App.2d 415, 136 P.2d 626 (1943), the defendant's confession was improper rebuttal because the trial judge assumed that a confession offered on rebuttal to impeach a defendant need not be voluntary and would not permit the defendant to prove on surrebuttal that he was beaten until he confessed. In addition, the trial judge used the impeaching confession as substantive evidence to convict. Similarly, in *State v. Smith*, 120 La. 530, 45 So. 415 (1908), the defendant's confession was offered in rebuttal, however, because that state's rules of evidence did not allow surrebuttal testimony, the defendant could not challenge the rebuttal confession nor offer his own testimony nor the testimony of other witnesses about falsity of the rebuttal witness's

testimony. The court made clear the basis for its holding when it said:

> "So long as the rule shall prevail in this state that a defendant cannot of right rebut rebuttal evidence, the prosecution will have to be confined strictly in rebuttal to rebuttal evidence proper. Otherwise, by an elastic appreciation of what is and is not rebuttal, an accused might be deprived of his constitutional right to be heard before being condemned." (Citations omitted).

*Smith,* 45 So. at 415; *see also State v. Turner,* 337 So.2d 455, 458 (La.1976) ("Since in Louisiana 'the defendant is without right to rebut the prosecutor's rebuttal,' La.R.S. 15:282, the defendant may be prejudiced by the denial to him of an opportunity to defend against new issues."). As previously noted, Maryland Rule 5–613(b) expressly gives the defendant a right to explain or deny any prior inconsistent statement, and we have no prohibition against surrebuttal evidence.

In *Birchett v. State,* 289 Ark. 16, 708 S.W.2d 625 (1986), the holding was based on the violation of an Arkansas rule of discovery. In Maryland, the State must, upon request, furnish the defendant with all written statements and the substance of any oral statements made by the defendant to a state agent, Md.Rules 4–462 and 4–463, and Hurt's statement in the instant case was disclosed to the defense attorney before trial. In Arkansas, the State must only furnish the defendant with statements made by the defendant that it intends to offer in its case-in-chief. In *Birchett,* after the defendant testified at his robbery trial the State called a witness, who had not been disclosed on discovery, to testify about a confession made by the defendant, as well as to testify that she saw the defendant with the watch and ring that were taken in the robbery. The court stated:

> "If a witness is proper for the state's case in chief, the prosecution is required to notify the defendant of the name and address of that witness upon timely request. [Arkansas

Criminal Rules of Procedure] 17.1(a)(i). If a witness is a genuine rebuttal witness there is not such requirement.

\* \* \*

If the witness is not a true rebuttal witness, the prosecution must comply with Rule 17.1 by notifying the defense that such witness will be called."

*Birchett,* 708 S.W.2d at 626.

The tactical advantage in *Birchett,* obtained by saving a defendant's confession and even more important by the testimony about his possession of the stolen property for use as rebuttal, is the unfair advantage obtained by the State's being able to withhold the defendant's statement as well as this vital *substantive* evidence of guilt from the defendant's discovery. The prejudice to the defendant was not any tactical advantage obtained by offering the statement two hours or so later in rebuttal rather than in the case-in-chief. *Cf. State v. Manus,* 93 N.M. 95, 597 P.2d 280, 289 (1979) (holding that the defendant was not prejudiced by testimony of rebuttal witness who was not disclosed as a witness for the State because defense counsel was given an opportunity to depose the witness before his testimony), *overruled on other grounds, Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982).

Thus, every out-of-state case cited by the majority is distinguishable because the prejudice to the defendant was the result of state evidentiary problems regarding rebuttal evidence that have been remedied in Maryland. In my opinion, none of the cited cases justifies the need for Maryland to adopt a rule treating the impeachment of a defendant by a prior inconsistent statement different from impeachment of any other witness or party. None of the cited cases justifies impliedly repealing Md.Rule 5–613(b) and precluding the prosecutor from using a defendant's prior inconsistent statement to impeach the defendant's testimony.

I will not go into the many cases that have reached a result contrary to the majority since the majority acknowledges the line of cases, but for example see *United States v. Porter,* 544 F.2d 936 (8th Cir.1976):

"That the statements could have been produced during the government's case in chief does not require a different result. 'The mere fact that testimony could have been admitted on direct does not preclude its admission on rebuttal.' *United States v. Calvert*, 523 F.2d 895, 911–912 (8th Cir.1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976) (footnote omitted); *United States v. Plata*, 361 F.2d 958, 962 (7th Cir.); *cert. denied*, 385 U.S. 841, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966). The scope of rebuttal is a matter in which the trial court has broad discretion. *United States v. Calvert, supra*, 523 F.2d at 911. After the defendant took the stand and denied involvement in the heroin sale, it was appropriate for the government to rebut that claim by putting Detective Olive on the stand to testify as to Porter's admissions." (Footnote omitted).

*Porter*, 544 F.2d at 939; *see also Wallace v. State*, 84 Nev. 603, 447 P.2d 30, 31 (1968) ("The fact that the oral confession was offered during rebuttal rather than during the State's case in chief is not cause for complaint."). Other similar cases are cited throughout this opinion.

## *HARRIS v. NEW YORK* DOES NOT SUPPORT THE MAJORITY'S HOLDING THAT INADMISSIBLE CONFESSIONS ARE ADMISSIBLE REBUTTAL BUT ADMISSIBLE CONFESSIONS ARE INADMISSIBLE REBUTTAL

The basis for the majority's holding is that it is "manifestly and substantially injurious" for the State to "sandbag" a defendant by not using a defendant's confession in the case-in-chief and saving it for use in rebuttal. The majority explains why it believes this is so:

"The advantage to the State in withholding the admissible confession for rebuttal was purely a tactical one designed for maximum prejudicial effect: either (1) to discourage the defendant from testifying, even to deny the guilt that the State is obliged to prove beyond a reasonable doubt, or (2), if, as occurred here, the defendant chose to testify, to have

the confession dramatically admitted afterward—just prior to jury deliberation."

349 Md. at 348, 708 A.2d at 323. The majority does not give juries or judges credit for much intelligence if it really believes that it must grant a new trial when witnesses testify out of order because juries and judges are so unduly influenced by the last witnesses to testify. In addition, the majority believes that allowing the State to call, in rebuttal, a witness to whom the defendant has confessed, rather than restricting those witnesses to the case-in-chief, is such a great tactical advantage and so substantially injurious to defendants that we must grant a new trial when prosecutors use this tactical advantage.

The majority's belief that the prosecution gets a substantial tactical advantage that is injurious to defendants by holding back confessions from the State's case-in-chief for use in rebuttal is reduced to the absurd when we contrast properly and improperly obtained confessions. The Court will not give the prosecutor this tactical advantage of saving a confession for rebuttal where the police have scrupulously preserved the defendant's constitutional rights, but the Court will give the State this prejudicial tactical advantage where the police have taken a confession in violation of the defendant's Fifth and Sixth Amendment rights.

If the majority really believes that it is much more tactically advantageous for the State, and substantially injurious to the defendant, for the prosecutor to withhold a confession in the State's case-in-chief and save it for use in rebuttal, then perhaps *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) is wrongly decided, and we should reward the State for securing valid confessions by permitting their use in rebuttal and deter the State from taking invalid confessions by forcing the State to introduce them only in the case-in-chief.

The majority does accept *Harris v. New York, supra,* and acknowledges that pursuant to *Harris* if a defendant takes the witness stand and on cross-examination denies making a con-

fession that was not admissible in the government's case-in-chief because of *Miranda* violations, the confession can be introduced in rebuttal. Apparently, the majority believes *Harris* created a new impeaching technique and new form of rebuttal evidence only available for confessions taken in violation of *Miranda*. Again, the majority misreads the case. What *Harris* held was that the traditional prosecution right to impeach a defendant's trial testimony by prior inconsistent statements is still available, even if the statement was taken in violation of the defendant's *Miranda* rights. The Court said:

> "Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, *it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.*" (Emphasis added) (footnote omitted).

*Harris,* 401 U.S. at 225–26, 91 S.Ct. at 645–46, 28 L.Ed.2d at 4–5. Unfortunately what the Supreme Court said "could hardly be contended" was not only contended by Wright, but was also adopted by this Court.

*Harris*'s application to the issue in the instant case has been interpreted opposite to the construction given *Harris* by the majority. In *Ameen v. State,* 51 Wis.2d 175, 186 N.W.2d 206 (1971), the Supreme Court of Wisconsin addressed a situation similar to the instant case where the defendant made the same contentions as were made in the instant case. The court summarized the contentions and the relevance of the *Harris* holding as follows:

> "[C]ounsel argues that the presenting as rebuttal evidence of statements made by defendant, inconsistent with his witness-stand testimony, gives such statements a 'blockbuster' dimension. The contention appears to be that all statements made by the defendant must be introduced as part of the case in chief, and, if not so presented, may not be offered as rebuttal testimony. Quite aside from the considerable discretion given trial courts in controlling what evi-

dence may be admitted in rebuttal, whatever merit there may have been in the argument made vanished with the recent United States Supreme Court decision in *Harris v. New York.*

\* \* \*

In *Harris,* the statements made by defendant to the police were not and could not have been used by the state as part of the case in chief. Here the statements made by the defendant to the police were not presented as part of the case in chief, but could have been. In both situations, as well as to the shades of grey in between where the state may not be sure as to admissibility of statements made, *Harris* controls and to use such statements in rebuttal only is to do ' \* \* \* no more than utilize the traditional truth-testing devices of the adversary process. \* \* \* ' The defendant here was entitled to take the stand in his own defense, or to refuse to do so, but, when he elected to testify, he cannot be insulated from ' \* \* \* the risk of confrontation with prior inconsistent utterances. \* \* \* ' " (Footnotes omitted).

*Ameen,* 186 N.W.2d at 209–10. As the Supreme Court of Wisconsin indicated, *Harris* should be applicable when the prosecutor knows there are *Miranda* violations, when the prosecutor is uncertain whether there are *Miranda* violations, when the prosecutor is doubtful whether there are *Miranda* violations, and when there are no *Miranda* violations.

It is distressing to me that, according to the majority, the State's failure to admit a valid confession in its case-in-chief is a far greater evil than taking a confession in violation of a defendant's *Miranda* rights. A confession in violation of *Miranda* may not "be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances," *Harris v. New York, supra,* 401 U.S. at 226, 91 S.Ct. at 645, 28 L.Ed.2d at 5, but if the State fails to use a defendant's confession in its case-in-chief, the defendant does have a license to use perjury free from the risk of confrontation by prior utterances. The majority also recog-

nizes that, in *Harris*, the Supreme Court "reached a pragmatic balance between two compelling public policies—the exclusionary rule precluding the use of confessions obtained in violation of *Miranda*, on the one hand, and not giving defendants a free ride to commit perjury, on the other." 349 Md. at 348, 708 A.2d at 323 (1998). I fully agree with this analysis, but the harm done by the State not offering the defendant's confession in its case-in-chief does not outweigh the harm in giving defendants "a free ride to commit perjury."

The sole basis for the majority's distinction between the prosecutor's use of valid and invalid confessions in rebuttal is its assumption that prosecutors need to be deterred from holding back confessions for use in rebuttal that could be used in the case-in-chief. There is no basis for the majority's speculations. To the contrary, there is good reason to believe that prosecutors as a general rule would want to present the best case possible in their case-in-chief. There is good reason to believe that prosecutors would want to use oral confessions as substantive evidence by putting them in their case-in-chief, rather than holding them for rebuttal as mere impeaching exhibits. This Court has never before precluded a prosecutor from admitting a defendant's confession in rebuttal, yet the most cursory survey of criminal cases would show that in the overwhelming majority of criminal cases confessions are introduced in the State's case-in-chief. This is also shown by the numerous suppression hearings where prosecutors go to great lengths to prove a confession was taken in compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), so they may use the confession in their case-in-chief. In fact, it is obvious from the Maryland cases discussed that often the reason why prosecutors withheld the "confessions" was not because they would be such powerful rebuttal, but because they were of such dubious value that only in the face of the defendant's denial of the statement did the scales tip in favor of admissibility.

In both *Bruce* and in the instant case, the defendant's statements were made to someone in the criminal milieu with doubtful credibility, whom the State may have been reluctant to call. It was only after the defendant testified that the scales may have tipped in favor of admissibility. In *Franklin,* it is obvious the prosecutor believed that admission of the defendant's marginally helpful admission was not worth interrupting the trial for a suppression hearing. It is unrealistic to think that a prosecutor, who has a confession by a defendant, would not want to introduce it as substantive evidence in the case-in-chief. Prosecutors like other litigants wish to put their best foot forward and present the best case possible. I sincerely doubt that the prosecutor withheld this "confession" to get any tactical advantage of calling Hurt as a witness in rebuttal, especially when by doing so the confession is not substantive evidence. If Wright did not testify, Hurt could not be called, and if Wright testified and admitted the statement to Hurt but said he lied to Hurt, there could be no rebuttal testimony. It was only after Wright's attorney brought out on re-direct examination of Wright that Wright did not and would not have made any incriminating statements to Hurt, that the prosecutor had to call Hurt in rebuttal.

## ISSUES NOT ADDRESSED BY THE MAJORITY

There are many troubling issues raised by the majority's opinion. It would seem that the rule against using a defendant's prior inconsistent statements in rebuttal is also applicable in civil cases, since the majority cites several civil cases in its opinion and also states that rebuttal prior inconsistent statements "cannot be used to permit the plaintiff/State unfairly to prejudice the defendant." 349 Md. at 342, 708 A.2d at 320. This might raise potential due process implications. Assume a plaintiff and defendant in a civil case have each made damaging admissions and assume each wishes to get what the majority suggests is the tactical advantage of saving the other party's statement for impeachment. After the plaintiff testifies and denies making the statement, the defendant can offer the extrinsic evidence of the plaintiff's statement in

the defense case. However, when the defendant testifies and denies making the prior inconsistent statement, the plaintiff is precluded from impeaching the defendant by rebuttal evidence of the prior inconsistent statement. Is there a potential due process violation to the plaintiff?

One of the most difficult issues to be resolved will be how to distinguish the full confession that was held not to be proper rebuttal in the instant case from the less than full confession that the majority says was properly admitted as rebuttal in *Bruce*. The majority gives us no guidance in the analysis, and a comparison of the two cases would seem to indicate there is no distinction.

Also left open is whether and how a defendant can be cross-examined about a prior inconsistent statement. This raises almost the same problems as using a confession on rebuttal. If, for example, the last cross-examination question asked by the prosecutor of the defendant is whether the defendant made a confession inconsistent with the defendant's trial testimony and if the defendant admits making the confession, then the testimony about the confession will still be the last evidence the jury hears. We are told that if the defendant denies making the confession the prosecutor cannot prove it in rebuttal because it will be the last thing the jury hears and, thus, prejudice the defendant.

It is also unclear whether the rule prohibiting impeachment of a defendant's trial testimony by using a prior inconsistent statement applies to written prior inconsistent statements admitted as exhibits in rebuttal that were not offered as exhibits in the case-in-chief. There would seem to be little basis to distinguish written and oral prior inconsistent statements, but can the majority say that a written statement that is admitted as an exhibit and goes into the jury room is substantially and injuriously prejudicial to the defendant merely because it was admitted as an exhibit later rather than earlier in trial?

Is the majority's new rule applicable to court trials? The language of the opinion seems to so indicate, but can the majority really suggest a defendant will be substantially prejudiced because a judge heard an admissible confession at the end of the trial rather than at the beginning of the trial?

Another problem will be for prosecutors to know when a confession is admissible in the case-in-chief or in rebuttal without a suppression hearing in every case. If a prosecutor is told by police that the defendant confessed but was not given the *Miranda* warnings, the prosecutor may not just save the confession for impeachment because the defendant may testify that the *Miranda* warnings were given and there was a full waiver so the confession should have been admitted in the State's case-in-chief and cannot be used as impeachment. The question also arises as to whether a prosecutor may make a confession admissible in rebuttal by simply refusing to prove *Miranda* waivers, thus, making the statement inadmissible in the case-in-chief. This Court has said "[i]n undertaking to prove a waiver of *Miranda* rights, 'a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.'" *McIntyre v. State*, 309 Md. 607, 614–15, 526 A.2d 30, 33 (1987) (quoting *Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724).

The majority's "trial procedure" rule is not based on any constitutional or statutory right enjoyed by the defendant, and it is contrary to our Rule 5-613(b). The rationale seems to be the majority's belief that the last bit of testimony has such undue impact that it overshadows all prior testimony in the case and its view that it is unfair to admit evidence that impeaches the defendant as the last evidence in the case. What the majority also seems to overlook is another rule of trial procedure; since the State has the burden of proof beyond any reasonable doubt, the State, not the defendant, has the right to open *and close*. This means the State is entitled to be the first, as well as the last, party to attempt to persuade the jury. Permissible evidence that impeaches the defendant as a witness properly belongs in the State's case as

rebuttal. There is simply no reason to give the defendant immunity from impeachment by prior inconsistent statements merely because those statements might also have been usable as substantive evidence in the State's case-in-chief. The State, as well as the defendant, ought to follow the same evidentiary rules and all witnesses ought to be equally subject to impeachment. Since the State had the right to open and close, it had the right to present, in rebuttal, the impeaching evidence permitted by Md.Rule 5–613(b). Merely because the State does not introduce all of the defendant's utterances in its case-in-chief should not permit defendants to take the stand and lie without fear of impeachment by prior inconsistent statements. I respectfully dissent.

Judge RODOWSKY and Judge KARWACKI have authorized me to state that they join in the views expressed in this concurring and dissenting opinion.